WALTER E. REID, GUARDIAN OF EUGENE W. FREEMAN

*vs.*

EUGENIA A. CROMWELL AND THOMAS E. CROMWELL

Sagadahoc.     Opinion, March 5, 1936.

*Arthur J. Dunton,* for plaintiffs.
*John P. Carey,*
*Marjorie Nowell,* for defendants.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MAN-
SER, JJ.

HUDSON, J. On appeal in equity. Claiming ownership in his
ward of eighteen shares of the capital stock of the American Tele-
phone and Telegraph Company and of two deposit books in Boston
banks, the plaintiff, as guardian of Eugene W. Freeman, by bill in
equity, seeks surrender of the certificate of said stock by the de-
fendant, Eugenia A. Cromwell, as well as relief on the book ac-
counts. The sitting Justice relieved only as to the certificate, de-
creed that the shares of stock evidenced by it were the property of
the ward and ordered that the defendant, Eugenia A. Cromwell,
endorse and deliver the certificate to the plaintiff, from which de-
cree the defendants appealed.

They say that the statement in the decree: "I find no fraud as
alleged in the allegations contained in the plaintiff's bill of com-
plaint," ousted the Court of equity jurisdiction and consequently
it had no right to order the surrender of the stock certificate. This
requires an examination of the allegations in the bill. The plaintiff,
having set up in paragraph 2 of his bill, ownership of the certificate
in his ward, alleged in paragraph 5 that Eugenia (step-daughter
of the ward) "designing and intending to get control of said prop-
erty for her own selfish ends, persuaded the said Eugene W. Free-
man to have said shares of stock registered in her name jointly with
his own, and also to have said deposits made in their joint names,
payable to either or to the survivor, which the said Eugene W.
Freeman did." This language contains no direct and specific al-
legation of fraud. If the word "designing" carries an implication of

fraud, it may be disregarded as surplusage, for, as hereinafter stated, there was no need to allege fraud in order to obtain an order for the surrender of this certificate.

In Paragraph 7, the allegation is that Eugenia "now holds possession of the certificate of the eighteen shares of telephone stock, above mentioned, which she refuses to surrender, and the said Eugenia A. Cromwell and Thomas E. Cromwell refuse to return said sum of Eleven Hundred and Fifty Dollars so fraudulently converted to their own use." Therein does appear the word "fraudulently" but we think it refers only to the $1150.00 which it is claimed the defendants received from the bank deposits and, receiving, converted; but if this be error and the word "fraudulently" were in fact intended to and does refer to the certificate of stock, as well as the money, still it, too, may be rejected as surplusage, as far as the certificate is concerned.

Neither allegation nor proof of fraud is essential to the granting of the equitable relief herein sought. The Court found that the ward was the owner of the stock evidenced by the certificate and that he had never lawfully parted with that ownership; in other words, that what took place between him and his step-daughter, Eugenia, did not constitute a valid gift inter vivos. The evidence shows that the Justice was fully justified in reaching that conclusion. The ward derived his ownership from his sister, who lived and died in Massachusetts. After her death (he was the sole beneficiary in her will), the certificate of this stock, which had been in his name and hers or survivor, was supplanted by the one, now in question, in the names of "Eugene W. Freeman and Eugenia A. Freeman and the survivor." This substitution on the facts in this case did not effect a valid gift inter vivos.

"To constitute a valid gift inter vivos the giver must part with all present and future dominion over the property given. He can not give it and at the same time retain the ownership of it." *Norway Savings Bank* v. *Merriam, et als.*, 88 Me., 146, 33 A., 840, 841.

"When one's intention is to retain the right to use so much of a bank account as he desires during his life, and that the balance upon his decease shall become the property of the

donee (although there may be a delivery of the bank book to the donee), no valid gift inter vivos is made." *Rose* v. *Osborne*, 133 Me., 497, 501, 180 A., 315, 317.

Need be simply to quote the evidence of the ward, that: "She was to own it after I died"; and that of Eugenia herself, in which, in answer to this question by the Court: "Do I understand that this Telephone stock was to become yours at your father's death?" she answered: "Yes; and then I was supposed to put it in my sisters' names and divide with them." This testimony, supplemented by other evidence in the case, sufficiently warranted the conclusion reached by the court that the ward as owner never intended to and did not part with "all present and future dominion" over this stock.

Then was presented a situation where Eugenia had taken possession of and withheld from the guardian a stock certificate covering the shares of stock that belonged to the ward. Such possession and withholding, though not fraudulent, are enough to give the Equity Court the right to compel the surrender of the certificate. Equity has jurisdiction, both under the statute, (R. S. 1930, Chap. 91, Sec. 36, § 11) and under general equity jurisdiction. *Farnsworth, Admx.* v. *Whiting, et als.*, 104 Me., 488, 72 A., 314.

True, the statute states that "in suits for re-delivery of *goods or chattels* taken or detained from the owner, and secreted or withheld, so that the same can not be replevied, . . ." but in *Farnsworth* v. *Whiting*, supra, it was held that bonds, notes and *stock certificates* were goods and chattels within the true meaning of this statute. There is sufficient proof herein that this stock certificate could not be replevied. Thus the assumption of equity jurisdiction by the Justice as to the certificate, even without proof of fraud, was proper. *Farnsworth, Admx.* v. *Whiting, et als.*, supra, on page 494.

The defendants also contend that this transaction as to the stock certificate is governed by Massachusetts and not Maine law and that under the former, there is no relief; but the record shows no proof of the Massachusetts law and in absence of such proof, the common law of Massachusetts is presumed to be the same as that of Maine, the forum. *Rose* v. *Osborne*, supra, on page 505, and cases therein cited.

They contend, also, that although there were not a gift inter vivos, there was established a valid joint tenancy (disfavored in this State), because Mr. Freeman for the benefit of himself and his step-daughter "purchased a contract right against the Telephone Company to be held jointly by himself and the defendant" step-daughter. *Chippendale, Admr.* v. *North Adams Savings Bank*, 222 Mass., 499, 111 N. E., 371, and other Massachusetts cases are cited as sustaining the contract theory.

But in Garland, Appellant, 126 Me., 84, 136 A., 459 decided in 1927, Chief Justice Wilson at some length and very ably discussed the contract theory (dealing with the Chippendale case), and our Court, without dissent, rejected that doctrine. Mr. Chief Justice Wilson said, on page 96:

"But we can not assent to the doctrine, that where the party to whom the fund belonged retains full control over it during his lifetime, and no actual gift inter vivos either of the fund or the chose in action is shown, though made payable to him or another or to the survivor, any title passes to the survivor by virtue of a contract between the bank and the owner and the survivor.

"An intended gift can no more pass after death by contract than by a simple order to pay. If the donor retains control for his own uses during his lifetime there can be no gift inter vivos, and the theory of a post mortem transfer by contract is as clearly of the nature of a testamentary disposition as a gift to take effect after death without such contract."

The Chief Justice demonstrated how the four essential elements of joint tenancy, viz: unities of time, title, interest and possession, did not exist in such a transaction, and said, on page 97:

"Therefore, both the doctrine of a joint interest thus created with a right of survivorship, or of a right of survivorship by contract, appear to violate well-settled principles of law of this state as to the creation of joint tenancies, and the transfer of property by gift, as well as the Statute of Wills, especially when the right of control for his own uses is not surrendered by the donor during his lifetime. . . .

"If the creation of a joint interest in bank deposits with the right of survivorship is desirable, the Legislature has power by its fiat to authorize it."

This Court does not now choose to overrule the Garland case. Although here we are concerned with a certificate of stock as the chose in action rather than bank deposits, we see no essential distinction.

*Appeal dismissed.*
*Decree below affirmed.*