60 So.2d 627 (1952)
CANOVA
v.
FLORIDA NAT. BANK OF JACKSONVILLE.
Supreme Court of Florida, Division A.
September 23, 1952.
*628 W. Gregory Smith and Smith & Axtell, Jacksonville, for appellant.
Chester Bedell, R.E. Williams and Bedell & Bedell, Jacksonville, for appellee.
THOMAS, Justice.
The appellant was unsuccessful in her prayer for a decree declaring her the owner of a savings account and the contents of a safe deposit box she claimed were given her by Garva E. Strong.
According to the allegations of her bill the decedent simply handed her the account book and the keys to the box and stated that they were hers. The fund was sizable; the property in the box consisted of stock certificates of considerable value, a few United States bonds and some jewelry.
The chancellor heard the testimony and decided it was insufficient to establish a gift inter vivos.
The decedent and his wife were living near the Canovas when the wife died. Decedent was feeble, his eyesight and hearing were greatly impaired, and he was alone in the world. Two or three months after his misfortune he moved to the home of his neighbors, the Canovas, who had meanwhile befriended him. There he remained, with two interruptions, until he died. During his stay with the Canovas, the appellant furnished him shelter, board and certain personal services, but for ample compensation which he was able and willing to pay.
According to the testimony of appellant's daughter-in-law, the decedent, upon returning to the Canovas after an absence of some duration, handed the appellant the bankbooks and safe deposit box keys and said to her: "Mrs. Canova, here are the keys to my safety deposit box, and my bankbooks. They are yours, but I may have to borrow from the checking account."
Afterward he deposited in the checking account the dividends from the stock cached in the safe deposit box, paid the rent for the box, drew checks to various payees including appellant, whom he paid regularly for the room, meals and services provided.
It should be stated now that the appellant does not claim she was given the account subject to check, although both books were delivered to her, but only the savings account and the property in the safe deposit box.
The actual making of the gift must depend entirely on the language we have quoted from the daughter-in-law's testimony, its effectiveness to be gauged by the words the decedent was said to have used, with such emphasis as can be gathered from appellant's assertion that thenceforth the keys and books remained in her possession.
To offset this evidence was the testimony that on several occasions decedent said he "would" see that the Canovas were rewarded for their kindness to him and the unquestioned proof that the Canovas, or at least the appellant, received periodical checks to cover any outlay in money, time or effort in decedent's behalf.
Appellant first asks whether it was proper for the court to ignore, or fail to give weight to, a certain paper offered in evidence. There is no occasion to elaborate on the point because, although the court expressed the thought the evidence was improper, he did admit it, and having done so, we cannot assume he thereafter disregarded it. The chancellor kept the case under advisement for many weeks after he heard the testimony, then, reciting that he had carefully considered the pleadings, evidence, argument and briefs, decreed that "Based on the pleadings and evidence" no gift by decedent to appellant had been effectuated. In view of these circumstances we will not undertake to say that the evidence did not receive such consideration as it deserved.
The appellant next complains about the denial to her of the privilege of explaining *629 a transaction between her and the decedent prefaced by her introduction of the stub of a check given to her by him. We detect no error in this ruling. Even though the appellee interposed no objection to the stub the appellant could not thus have vested herself with the right to offer testimony with a person deceased, in view of our statute. And, anyway, before the court ruled on the objection a motion was made by appellant to withdraw the offer.
Also we have no criticism of the ruling of the chancellor with reference to allowing the appellant to reopen the case for the taking of further testimony and his so-called refusal to allow a proffer. The chancellor is not shown to have abused his discretion in the first instance, and in the second there seems to have been placed in the record a statement of what the witness would have said, which, in practical effect, amounted to a proffer.
The last, and most important question deals with the effectuation of the gift. As appellant states it, had the chancellor any discretion to decide that none was in fact accomplished "where the pleadings and evidence [established] by clear and convincing evidence the making by the decedent of [the] gift * * *."
The difficulty we have with appellant's position as reflected in the question is soundness of the premise. At the outset we pinpointed the testimony solely relied upon to show the making of the gift  the simple statement said to have been uttered in the presence of the daughter-in-law.
Subsequent events seem to us to have rendered the remark almost inconsequential. For instance the appellant's husband, who in all the circumstances appearing in this record cannot be said to have been dissociated from his wife so far as the arrangement with Garva E. Strong was concerned, was asked whether he told a certain attorney, before the safe deposit box was opened after decedent's death, about any claim he and his wife had; and he replied, "No, we had no way of knowing if we had any claim" explaining, "I didn't know what was in the box, whether there was a will there, or what was in there." As we have said, testimony had been given about the decedent's having said, even after he had supposedly made the gift, that he "would" take care of the Canovas, presumably by will. Despite the alleged gift of nearly all his assets, decedent continued methodically to pay the appellant until his death, and at that time the balance in his checking account had shrunk to less than eight hundred dollars. Actually, the account would have been overdrawn by the last check had he not, subequent to the supposed gift, deposited to his account dividends on the stock that reposed in the safe deposit box. In sum, we have detected little difference, if any, in the decedent's manner of dealing with his property and conducting his affairs before and after the date he is said to have given most of it away, and there is no evidence of dominion by appellant over it, except that she held possession of the books and keys.
To constitute a gift inter vivos there must be delivery and surrender of dominion by the donor, coupled, of course, with the intent then and there to pass title.
Appellant concedes now, as she did in the chancery court, that she had to meet the rule of proof prescribed in Rich v. Hallman, 106 Fla. 348, 143 So. 292. To prevail, her evidence had to be clear and convincing that there was delivery and surrender. The chancellor did not find it had these qualities, and in the cold type we have not discovered them. We are frank to say we would not from our own study be disposed to rule in appellant's favor, much less are we inclined to disturb the decree of a learned and experienced chancellor who heard the testimony first hand.
We have no criticism either of the conclusion or the way it was expressed.
Affirmed.
SEBRING, C.J., and TERRELL and HOBSON, JJ., concur.