131 So.2d 211 (1961)
Clyde KUEBLER, Appellant,
v.
Rudolph H. KUEBLER, Executor, Appellee.
No. 1798.
District Court of Appeal of Florida. Second District.
January 6, 1961.
Rehearing Denied June 9, 1961.
*212 J. Field Wardlaw, Wardlaw, Stewart & Van der Hulse, West Palm Beach, for appellant.
Phillips & Hathaway and E.M. Baynes, West Palm Beach, for appellee.
KELLY, CLIFTON M., Associate Judge.
Appellant Clyde Kuebler seeks reversal of a summary final decree entered on the 2d day of March, 1960, by the Circuit Court of Palm Beach County in favor of Appellee Rudolph H. Kuebler as executor of the last will and testament of Louis C. Kuebler, deceased, wherein it was decreed that 796 shares of the corporate stock of the City Loan and Savings Company of Lima, Ohio, along with a stock dividend in the amount of $955.20 belonged to the estate of Louis C. Kuebler, rather than to the appellant.
On the 3d day of September, 1956, Louis C. Kuebler, who will be hereinafter referred to as Louis, being a resident of Palm Beach County, Florida, died testate. His last will and testament was admitted to probate in the County Judge's Court of Palm Beach County, Florida, with his son, Rudolph H. Kuebler, being named executor of his estate as provided in the will. Thereafter Clyde Kuebler, who will hereinafter be referred to as appellant, filed in the County Judge's Court in connection with *213 the said probate proceeding a pleading entitled "Proof of Claim and Petition." This petition alleged in substance that appellant was the owner of 796 shares of the capital stock of the City Loan and Savings Company of Lima, Ohio, having a value of $46,168.00, issued under date of February 15, 1955, in the name of "Louis Kuebler and Clyde Kuebler as joint tenants with right of survivorship and not as tenants in common" and that the stock was being improperly withheld from him by the executor of Louis's estate along with a stock dividend declared on the stock after the death of Louis. This proof of claim and petition concluded with a prayer that the executor be required to deliver up the stock and dividend to appellant. To this claim the executor filed his written defenses denying that appellant was the owner and entitled to the possession of the stock and dividend. In addition to denying that the stock and dividend belonged to the appellant, the executor asked the Court to declare that the stock and dividend be the property of Louis's estate. This lengthy petition filed by appellant was more than a mere proof of claim as contemplated by Section 733.16 of the Florida Statutes, F.S.A., for it contained the ultimate facts upon which Clyde based his claim and contained a prayer for affirmative relief. Likewise, the defense of the executor was something more than an objection to a claim as required by the probate laws as it set forth in great detail the executor's defenses to the appellant's claim and concluded with a prayer for affirmative relief "That the Court may grant an order to your executor declaring the stock to be the property of the estate of Louis C. Kuebler together with all dividends arising therefrom."
Motions of the executor to dismiss and to strike the proof of claim and petition in the County Judge's Court were denied by the County Judge on March 4, 1958.
Following an elapse of several months with no further action being taken in the case, the executor filed a motion for summary judgment, a new motion to dismiss and to strike, and a demand for a jury trial; and the appellant filed a motion for summary judgment.
The County Judge, without ruling upon any of these motions, being of the opinion that his Court was without jurisdiction of the subject matter of the claim, ordered the entire proceedings transferred to the Circuit Court of Palm Beach County "In Equity" for further proceedings without interruption under the provisions of Rule 1.39(b), Florida Rules of Civil Procedure, 30 F.S.A., along with the case file consisting of three large volumes which included all pleadings, motions, orders, depositions in discovery and otherwise, briefs of counsel, etc.
Following this transfer to the Circuit Court both parties filed more motions similar to the ones previously filed in the County Judge's Court but to no avail as the chancellor of the lower court ruled that the cause should be determined by the pleadings previously filed in the County Judge's Court which were undisposed of at the time the case was transferred as no appeal was taken from the order transferring the case to the Circuit Court and, further, no appeal was taken from the order of the County Judge which denied the executor's original motion to dismiss and strike the proof of claim and petition.
We are called upon by this appeal to determine if the Circuit Court ruled correctly in declaring that the above described stock and dividend rightfully belonged to the estate of Louis C. Kuebler.
A careful examination of the entire record on appeal, including all pleadings, depositions on file and admissions, shows that the stock certificate was dated February 15, 1955, and was issued in the name of "Louis Kuebler and Clyde Kuebler as joint tenants with right of survivorship and not as tenants in common." The stock certificate and dividend came into the hands of the executor as hereinafter explained.
During his lifetime Louis owned in his sole name 2125 shares of the capital stock *214 of The City Loan and Savings Company, Lima, Ohio. The stock was represented by several different stock certificates, and from time to time Louis hypothecated all of them to First National Bank, Lake Worth, Florida. The Lake Worth Bank had actual, physical, possession of the certificates. On February 15th, 1955, Louis caused 796 shares to be re-issued to Louis Kuebler and Clyde Kuebler jointly, as previously stated. Appellant was the nephew of Louis. Apparently, appellant had no knowledge of the transfer until June 22, 1955, when The Lake Worth Bank wrote Clyde as follows:
"Your uncle, Mr. Louis Kuebler, has instructed this bank to transfer certain shares of stock in The City Loan and Savings of Wapakoneta, Ohio into the joint ownership of yourself and Mr. Kuebler.
"The above stock is pledged for certain loans at this bank. It will be necessary for you to sign the enclosed stock assignments and return so this transaction may be completed.
"A self addressed envelope is enclosed for your convenience. If we may be of any further assistance please do not hesitate to call on us."
Appellant signed the stock assignment in blank and returned it to the bank.
On July 12, 1955, Louis caused the further number of 1329 shares to be re-issued to Louis and appellant jointly, in the same fashion as the other 796 shares. All of the stock remained in the possession of The Lake Worth Bank as security for loans to Louis, and The Lake Worth Bank continued to hold appellant's blank stock assignment.
During October, 1955, Louis caused The Lake Worth Bank to forward the stock certificates for 1329 shares to the Savings Company with the request that new certificates be issued to "Louis Kuebler and Rudolph Kuebler, as joint tenants with the right of survivorship and not as tenants in common." This was done and the certificates returned to The Lake Worth Bank. From aught appearing in the record appellant was never notified of the transfer. Apparently, the Savings Bank acted solely upon the strength of the stock assignment signed in blank by appellant. He never questioned or protested the making of the transfer.
Under date of January 5, 1956, Louis wrote appellant:
"Sign your name under my. I just got some dividend stock from the City Loan. So I want to get your name on it. Return it as soon as you can. I am feeling better getting along although today we are having cold weather down to 40° . See you next summer."
Apparently, a stock assignment was enclosed. Appellant signed it without hesitation or objection and returned it to Louis.
On February 6, 1956, Louis again wrote appellant:
"Please sign this stock paper on the back in the presence of some one as wittness. When I get it back I will sign it. This is my dividend stock and they made an error. I have 796 shares on your name. It reads like this. In 2 weeks I will send you a card for you to sign a Joint Stockholders Contract."
This "stock paper" likewise was signed by appellant without objection and returned to Louis.
At one time Louis executed a will, later revoked, wherein appellant, along with Rudolph, was named residuary beneficiary of Louis's estate. Rudolph was Louis's son. After the transfer of the 1329 shares of stock to appellant in July, 1955, Louis executed a new will revoking all former wills and making no mention of appellant. Louis's Last Will and Testament, subsequently probated, was executed in August, 1956, and likewise made no mention of appellant. Upon Louis's death, The Lake Worth Bank called upon the Executor to pay Louis's debt. This was done and all of the stock *215 certificates, along with appellant's blank stock assignment, were delivered to the executor. Appellant now claims the 796 shares of stock.
The record does not disclose how many stock assignments appellant executed in blank, but at least one remained in the hands of The Lake Worth Bank at the time of Louis's death.
It appears that Louis intended that appellant should have the 796 shares of stock upon the former's death, but requirements for its testamentary disposition were not met. Unless an interest vested in him during the donor's lifetime, appellant cannot prevail here.
It is well settled that to effectively pass title by gift there must be a surrender of dominion over the res, coupled with the intent then and there to pass title. In other words, there must be an immediate vesting of some interest in the donee, complete and irrevocable. If the donor withholds divestiture it is not a legal gift. A delivery which does not confer the present right to reduce the res into possession of the donee is insufficient. Thus, no gift is consummated where there is delivery to a third person, if it is clear that the third person is holding the property on behalf of the donor, who has no intention of divesting himself of control. If the intention of the donor is that nothing is to vest until his death, the transaction is testamentary in character and will fall unless it conforms with the formal requirements of the law relating to testamentary disposition of property. Leonard v. Campbell, 1939, 138 Fla. 405, 189 So. 839; Webster v. St. Petersburg Federal Savings & L. Ass'n, 1945, 155 Fla. 412, 20 So.2d 400; Dodson v. National Title Ins. Co., 1947, 159 Fla. 371, 31 So.2d 402; Crossman v. Naphtali, 1948, 160 Fla. 148, 33 So.2d 726; Barbash v. Barbash, Fla. 1952, 58 So.2d 168; Canova v. Florida Nat. Bank of Jacksonville, Fla. 1952, 60 So.2d 627; In re Engler's Estate, 1952, 3 Fla. Supp. 4, appeal dismissed Fla., 66 So.2d 305; and Coffey v. Commissioner of Internal Revenue, 5 Cir., 1944, 141 F.2d 204.
It is apparent from the circumstances shown by the record that appellant signed and delivered the stock assignment in blank to The Lake Worth Bank for the purpose of giving Louis complete control over the stock. This is demonstrated by the fact that in October, 1955, without notifying appellant, Louis took 1329 shares, previously transferred to Clyde, and changed ownership to Rudolph, his son. Likewise, Louis could have changed ownership of the remaining 796 shares now in dispute in the same manner. This meant that Louis had complete control of the stock. That appellant fully understood that to be the effect of the transaction is conclusively demonstrated by the following statements made by Clyde in response to questions propounded to him upon a discovery deposition taken at the instance of the executor:
"Q. Now, in February, 1955, when you saw him next earlier in time, was there any conversation between him and you about the stock at that time? A. Yes.
"Q. Will you please tell us where that took place? A. It took place on a Thursday afternoon, if my memory is correct, and he took me over to West Palm Beach to show me the property that he owned in the colored section.
"Q. And was it on that occasion that conversation came up about stock? A. He just told me, he says I am leaving you stock.
"Q. What were his words the best you can recall? A. Well, I just can't recall, he just wrote it out on paper, he says I am leaving you stock. (Louis at this time had a malignant throat cancer.)
"Q. After his death? A. That's correct. Because I don't believe he would give it away before his death.

*216 "Q. Was that your understanding from what he said that he did not intend to give it away before his death? A. Well, he always said that he would never give anything, his stock or  not only stock, but his own money that he  how can I bring that out to make it short, but his money, nobody would enjoy it until after he was dead.
"Q. In other words, he would keep it until he was gone? A. That is correct.
"Q. Is that your understanding of what he did with the stock we are discussing, keep it until after his death? A. Yes.
"Q. And that is based upon your conversations with him? A. Yes.
"Q. Did he ever indicate to the contrary of what you have just stated? A. Just what do you mean, Mr. Hathaway?
"Q. Did he ever tell you that he was giving you something now, before he died? A. No, only that he wanted to buy me a house down in Lake Worth and I refused it."
This makes it clear that the essentials of a gift were not present. It is also well established that an imperfect gift inter vivos cannot be enforced as a trust. Annotations 96 A.L.R. 383 and 123 A.L.R. 1335.
It follows that no interest in the stock vested in appellant during the lifetime of Louis, and appellant's claim cannot be allowed.
Appellant strenuously maintains that the chancellor erred grievously in arriving at his decision by failing to take into consideration the law of the States of Ohio and Florida with regards to the creation of a joint tenancy in shares of stock with the right of survivorship. The City Loan and Savings Company was an Ohio Corporation and at the time the 796 shares of stock were placed in the names of Louis Kuebler and Clyde Kuebler as joint tenants, Section 1701.34(D) of the Ohio revised code provided as follows:
"A joint estate with the incidents of a joint estate as at common law, including the right of survivorship, may be created in shares by issuing a certificate therefor to two or more persons with the words `as joint tenants' or `as joint tenants with right of survivorship and not as tenants in common' following their names. Upon receipt by a corporation of proof satisfactory to it of the death of one or more of such joint tenants it may issue a new certificate to the survivor or survivors."
And section 689.15 of the Florida Statutes, F.S.A., provided:
"Estates by survivorship. 
The doctrine of the right of survivorship in cases of real estate and personal property held by joint tenants shall not prevail in this state; that is to say, except in cases of estates by entirety, a devise, transfer or conveyance heretofore or hereafter made to two or more shall create a tenancy in common, unless the instrument creating the estate shall expressly provide for the right of survivorship; and in cases of estates by entirety, the tenants, upon divorce, shall become tenants in common."
The mere act of Louis causing the 796 shares of stock to be re-issued in his name and that of appellant was not in and of itself sufficient to establish a complete gift and transfer of the shares either before or after the death of Louis, notwithstanding the wording of the above statutes. In order for the transaction to have been completed such that appellant could prevail here there must have been in addition to the re-issuance a donative intent, delivery of possession and surrender of dominion and control. Eulette v. Merrill, Lynch, Pierce, Fenner, and Beane, Fla.App. 1958, 101 So.2d 603, 604.
*217 In the Eulette case, supra, the grandfather "purchased stocks" and "caused the certificates representing said shares to be placed in the name of his grandson, Kasper Eulette." The grandson was advised by the grandfather that he held stocks in the name of Kasper Eulette, but the grandson never saw the certificates and the grandfather retained possession of same and collected the dividends thereon. Held, the decree denying the grandson's claim to the stock is affirmed. To establish ownership by gift inter vivos the claimant must show a donative intent, delivery of possession and surrender of dominion and control of the subject matter of the gift.
The conclusion reached in this case is supported by cases from other jurisdictions. See Buffaloe v. Barnes, 1946, 226 N.C. 313, 38 S.E.2d 222, rehearing denied 226 N.C. 778, 39 S.E.2d 599, denying a claim of survivorship interest in a stock certificate because the requirements of a gift inter vivos were not established. Particularly where the donee admits he is not to have such stock until the death of the donor, his claim as survivor is not allowed. See Reid v. Cromwell, 1936, 134 Me. 186, 183 A. 758, where a stepfather had a certificate of stock issued jointly in his name and that of his stepdaughter with right of survivorship but the claimant stepdaughter admitted that the stock was to become hers at her stepfather's death, and the court affirmed the decree for defendant because the testimony showed that the owner never intended to and did not part with all present and future dominion over this stock. Also, Manning v. United States Nat. Bank of Portland, 1944, 174 Or. 118, 148 P.2d 255, 153 A.L.R. 922; Southern Industrial Institute v. Marsh, 5 Cir., 1926, 15 F.2d 347; and In re Grossman's Estate, 1956, 386 Pa. 647, 126 A.2d 468.
Considering the facts in this case as previously detailed, the above quoted statutory law of Ohio and Florida regarding the creation of a joint tenancy with the right of survivorship does not demonstrate that the decision reached herein is in error. At the time the stock was issued by the City Loan and Savings Company in the name of Louis and appellant, the appellant did not acquire a vested interest therein such that upon the death of Louis he would own it without the shares of stock having been delivered to him with the intent to pass title. Louis's request to the City Loan and Savings Company to re-issue the stock in his name and that of appellant and the subsequent re-issuance, did not create a contractual obligation such that the appellant is entitled to the shares of stock on the contract theory.
Considering the four co-existing unities of time, title, interest and possession which are generally necessary and requisite to the creation and continuance of a joint tenancy, it is readily seen that appellant's claim is sorely lacking as he had never had possession of the stock and, further, he was not to have it until after Louis's death, nor did he exercise any control over it. Kozacik v. Kozacik, 1946, 157 Fla. 597, 26 So.2d 659; Strout v. Burgess, 1949, 144 Me. 263, 68 A.2d 241, 12 A.L.R.2d 939; and Wolf v. Johnson, 1929, 157 Md. 112, 145 A. 363.
Appellant further contends the lower court erred in holding that the presumptions in this case were against appellant as the stock certificate involved prima facie created a joint estate, appellant being prima facie a joint tenant with right of survivorship. We are unable to find in the record where any such finding was made; however, this is a matter of no consequence as the undisputed facts plainly show what the true state of affairs was with reference to the stock. Even if there had been a presumption made by the court that appellant owned the stock at the time of Louis's death, this presumption would have been completely destroyed by the evidence in the case and notably by appellant's deposition.
We agree with the decision of the learned chancellor that the evidence was insufficient to establish a valid inter vivos gift of the 796 shares of stock. The summary final *218 decree entered in favor of the appellee was correct.
Affirmed.
KANNER, Acting C.J., and SHANNON, J., concur.

On Petition for Rehearing
KELLY, CLIFTON M., Associate Judge.
Appellant in his Petition for Rehearing contends that this Court by its act of affirming the ruling of the lower Court failed to consider that where an instrument creating or purporting to create an estate of joint tenancy with survivorship shall expressly provide for the right of survivorship a gift is presumed and such gift is not measured by the rules governing gifts inter vivos as the nature of a joint tenancy is such that surrender of dominion and control and delivery are missing. Seng v. Corns, Fla. 1952, 58 So.2d 686; Cerny v. Cerny, 1943, 152 Fla. 333, 11 So.2d 777; Crabtree v. Garcia, Fla. 1949, 43 So.2d 466; Hagerty v. Hagerty, Fla. 1951, 52 So.2d 432; Spark v. Canny, Fla. 1956, 88 So.2d 307. We agree that the creation of such an estate does not require a complete surrender of dominon and control since to do so would be inconsistent with the nature of such an estate, and anything that was said in our opinion which would appear to be expressing a different view, we now correct same; but even though in such cases there can't be a strict and literal compliance with the rules relating to gifts inter vivos there can be shown by parol evidence and otherwise a lack of present donative intent in connection with creating an estate of joint tenancy with right of survivorship. See Webster v. St. Petersburg Savings & Loan Association, 155 Fla. 412, 20 So.2d 400; Spark v. Canny, Fla., 88 So.2d 307, and Reid v. Cromwell, 134 Me. 186, 183 A. 758.
A clear and unmistakable intention on the part of the donor to make a gift of his property is an essential requisite of a gift inter vivos, whether it be a gift of stock in a Corporation or a gift of other type of property. See Jones v. Ferguson, 150 Fla. 313, 7 So.2d 464. In re Slawson's Estate, Fla., 41 So.2d 324, 328; Lowry v. Florida National Bank of Jacksonville, Fla., 42 So.2d 368; Canova v. Florida National Bank of Jacksonville, Fla., 60 So.2d 627; McKinnon v. Commerford, Fla., 88 So.2d 753, and also Vol. 38 C.J.S. Gifts § 15, page 790; and it has been held that this intention must be inconsistent with any other theory. Vol. 38 C.J.S. Gifts § 15, pp. 790 & 792.
It is clear that Louis did not have a present, irrevocable intent to make an inter vivos gift of his stock to the appellant. This conclusion is apparent upon a careful consideration of the evidence submitted to the lower court which shows briefly among other things that: (1) At all times Louis had the stock pledged for a loan for his benefit only. (2) After the creation of the joint tenancy Louis continued to receive and apply to his own use the stock dividends. (3) Louis at all times referred to the stock and dividends as my stock and dividends. (4) The bank held a blank stock assignment from the appellant at all times for Louis's sole benefit. (5) After Louis had 2125 shares of stock issued to himself and appellant jointly with right of survivorship, he caused a new certificate covering 1329 shares of this stock to be re-issued to himself and his son Rudolph Kuebler as joint tenants with right of survivorship. (6) Appellant in his discovery deposition previously referred to in our opinion stated his Uncle Louis wanted him to have the stock after his death.
When the joint tenancy in the 796 shares of stock with right of survivorship was first created a full and complete gift intervivos was presumed, but such presumption could be rebutted and overcome by clear and convincing evidence showing that the donor did not have a present donative intent at the time the joint tenancy in the stock was created.
*219 In our opinion we have said "The mere act of Louis causing the 796 shares of stock to be re-issued in his name and that of appellant was not in and of itself sufficient to establish a complete gift and transfer of the shares [of stock] either before or after the death of Louis, notwithstanding the wording of the above statutes (referring to section 1701.34(D) of Ohio revised code and section 689.15 of the Florida Statutes)." This statement taken out of context would appear to be an incorrect statement of law since until proven otherwise appellant upon the death of Louis was presumed to be the rightful owner of the shares of stock and that all the rules governing gifts inter vivos had been complied with at the time the joint tenancy in the stock was created. What should have been added to have made the statement complete was that Louis, the donor, in addition to the physical act of having a new stock certificate issued, must have had a present donative intent such that appellant's right and interest in the stock was to have vested immediately and irrevocably.
In conclusion we hold that upon the death of Louis, it was presumed that he had made a complete inter vivos gift of his 796 shares of stock to appellant, but such presumption was rebuttable and an inquiry could properly be made going beyond the four corners of the stock certificate to determine if Louis had a present donative intent when the joint tenancy in the shares was created.
Appellant's Petition for Rehearing having been carefully considered the same is hereby denied and we adhere to our original decision affirming the lower court.
KANNER, Acting C.J., and SHANNON, J., concur