230 So.2d 18 (1969)
Thomas Edward SULLIVAN, Appellant,
v.
AMERICAN TELEPHONE AND TELEGRAPH COMPANY, Inc., and Thomson & McKinnon, Appellees.
No. 1910.
District Court of Appeal of Florida. Fourth District.
December 10, 1969.
Rehearing Denied January 28, 1970.
Robert G. Murrell, of Sam E. Murrell & Sons, Orlando, for appellant.
Gregory Presnell and William H. Robbinson, of Akerman Senterfitt, Eidson, *19 Mesmer, Robbinson & Wharton, Orlando, for appellees.
PER CURIAM.
Involved here is the question of ownership of corporate stock upon the death of the purchaser who had caused the shares to be issued in the joint names of herself and her son.
Anna M. Sullivan had a son named Thomas Edward Sullivan and a grandson named Thomas Edward Sullivan, Jr. For a number of years Mrs. Sullivan lived with her son in Chicago where she was employed by American Telephone and Telegraph Company, Inc. Through a company stock purchase plan she acquired stock in the company which she caused to be issued in the joint names of herself and her son. Mrs. Sullivan retained the stock certificates in her possession, not only during the time that she lived with her son, but also after she moved to Homestead, Florida in 1955 and lived by herself. With the son's acquiescence such dividends as were received were used by Mrs. Sullivan for her personal expenses.
Twelve days before Mrs. Sullivan died in December, 1964, Thomas E. Sullivan, Jr., the grandson, brought Mrs. Sullivan from Homestead to his home in Orlando. At that time, upon the request of Mrs. Sullivan, the grandson obtained the stock certificates from Mrs. Sullivan's safe deposit box. There were seven certificates representing a total of 300 shares of American Telephone and Telegraph, Inc. Two certificates representing 250 shares were in the name of Anna M. Sullivan and Thomas E. Sullivan, joint tenants, and the remaining five certificates representing 50 shares were in their names "as joint tenants with right of survivorship and not as tenants in common." When the grandson took possession of the stock certificates Mrs. Sullivan told him that she had originally intended the stock to go to her son upon her death, but that she had changed her mind and wanted the grandson to have the stock upon her death.
A few days after Mrs. Sullivan's death, the grandson took the stock certificates to the brokerage firm of Thomson & McKinnon requesting that the stock be sold. He furnished the necessary death certificate and executed an affidavit that he was the surviving joint tenant, endorsing the stock as such. The stock was sold and the brokerage firm issued its draft in the amount of $19,830.12, payable to Thomas E. Sullivan as survivor, the grandson obtaining the proceeds of this draft. Shortly thereafter, Thomas E. Sullivan, the son, became aware of the sale of the stock and made demand upon the brokerage firm and American Telephone and Telegraph, Inc. for return of the stock or else indemnification of his loss for their conversion of the stock. The brokerage firm and American Telephone and Telegraph, Inc. then brought this suit for declaratory decree to determine ownership of the stock, naming Thomas E. Sullivan and Thomas E. Sullivan, Jr., as defendants (but not naming as defendant the personal representative of Mrs. Sullivan's estate).
After a non-jury trial the court found that Thomas E. Sullivan, the son, was the person whose name appeared on the stock certificates as the joint tenant.
It further found:
"4. Mrs. Sullivan, until just prior to her death, never exhibited her bonds to her son or grandson. Neither knew how many shares she had. She received all the dividends herself, retained complete custody and possession of the stock.
"5. The son, Thomas E. Sullivan, testified that he gave his mother approximately $700.00 for the purpose of her buying stock in the late 1940's. The Court cannot tie this to any of the stock in question however, and therefore discounts this testimony.
"6. The requisites of an intervivos gift from Anna M. Sullivan to Thomas E. Sullivan, her son, do not exist. It is quite apparent that at the time the bonds *20 were issued it was the intention of Mrs. Sullivan that nothing was to vest until her death. There is no evidence that the transactions surrounding the issuance of bonds conformed with the formal requirements of law relating to the testamentary disposition of property. Therefore the entire transaction as it relates to Thomas E. Sullivan, the son, must fail. (Citations omitted.)
"7. Mrs. Sullivan was living in Dade County, Florida in 1964. At Thanksgiving of that year her grandson, Thomas E. Sullivan went to Miami. The day after Thanksgiving, at his grandmother's request, he picked up her safe deposit box contents. Included therein were the 300 shares of stock in question. At this time, Mrs. Sullivan said that originally she intended her stock to go to her son, but this was no longer her desire. She then indicated that the bonds would go to the grandson, but in so doing she gave special instructions as to their use and ultimate disposition. At this time, Mrs. Sullivan was obviously near death (she died 12 days later). The conversation and publishing of the bonds did not indicate any immediate and absolute gift either. The deceased was again expressing a desire of what to do with her assets upon her death. In effect, she was attempting to set up an oral testamentary trust. Mrs. Sullivan did not endorse the bonds. Any delivery was conditioned and obviously not to be completed until her death. The Court finds that the grandson, Thomas E. Sullivan, received no interest in the bonds prior to the death of his grandmother.
"8. Since no actions of the deceased, Anna M. Sullivan, created any legal interest in the bonds to either of the named Thomas E. Sullivans at the time of her death, she died possessed and seized of the entire interest of the 300 shares of stock in question. The 300 shares of stock were properly a part of her estate."
On the basis of these factual findings the court held that neither the brokerage firm nor American Telephone and Telegraph Company, Inc. had any liability to either the son or the grandson.
The son, Thomas Edward Sullivan, appeals from the final judgment. We affirm.
The critical appellate point is whether or not the mother validly made an intervivos gift of an interest in the stock to her son during her lifetime.
The essential elements of a gift intervivos are (1) present donative intent, (2) delivery, and (3) acceptance by the donee. 15 Fla.Jur., Gifts, § 11; 38 C.J.S. Gifts § 10. We find the most significant flaw in this transaction to be the lack of donative intent.
Viewed in a light most favorable to the son, it may be said that the registering of the stock in both names created a presumption of a gift. Nevertheless, such a presumption is not conclusive of the issue and may be rebutted. Kuebler v. Kuebler, Fla.App. 1961, 131 So.2d 211; Sullivan v. Chase Federal Savings & Loan Association, Fla.App. 1960, 119 So.2d 78; Spark v. Canny, Fla. 1956, 88 So.2d 307.
To partially repeat and summarize, the record reflects acts on the part of Mrs. Sullivan which are inconsistent with a present donative intent on her part to make a gift to her son.
Mrs. Sullivan:
1. retained sole possession of the stock certificates,
2. received and used all dividends,
3. treated the stock solely as her own and referred to it as such,
4. attempted a subsequent disposition of the stock to her grandson just prior to her death, and

*21 5. intended that nothing vest in her son until her death.
Further, the conduct of Thomas E. Sullivan, the son, was also inconsistent with the concept of a present gift. His testimony reveals that:
1. he never saw the original stock certificates, nor did he know how many shares his mother had, and
2. he never questioned his mother's complete control of the stock, nor did he ever assert any rights or handle any transactions concerning the stock.
From the foregoing it is unmistakably clear and convincing that there was no intention on the part of Mrs. Sullivan to donate and make a gift of this stock or any interest in it to her son at the time of the stock's registration and issuance, or at any time during her lifetime. Because of this lack there was no intervivos gift. Kuebler v. Kuebler, supra; Eulette v. Merrill, Lynch, Pierce, Fenner and Beane, Fla. App. 1958, 101 So.2d 603.
There is yet another reason why this purported gift must fail. It is manifest that Mrs. Sullivan intended that nothing with reference to this stock should vest until her death. Within this frame the transaction is testamentary in nature and the gift attempt ineffectual. Thomas, Florida Estates Practice Guide, Chapter 1, § 4; Sullivan v. Chase Federal Savings & Loan Association, supra; Kuebler v. Kuebler, supra.
We have assayed the record and confirm that the trial court's findings and decision are supported by abundant, competent evidence. The final judgment's presumption of correctness has not been overcome and no reversible error disclosed. Dade County, etc. v. Peppers, Fla.App. 1964, 168 So.2d 198; Bertman v. Solomon, Fla.App. 1964, 166 So.2d 499; Global Aero Service, Inc. v. Lloyd Aero Boliviano, S.A., Fla.App. 1963, 157 So.2d 708; Taylor v. Twin City Transit Co., Fla.App. 1962, 145 So.2d 543.
Affirmed.
WALDEN, REED and OWEN, JJ., concur.