345 So.2d 834 (1977)
Jordan FREEDMAN and Alan Freedman, Appellants,
v.
Franklin FREEDMAN, Etc., Appellee.
No. 76-801.
District Court of Appeal of Florida, Third District.
May 3, 1977.
*835 Freidin & Goldfarb, Miami, for appellants.
Broad & Cassel and Lewis Horwitz and Craig B. Sherman, Bay Harbor Island, for appellee.
Before HENDRY, C.J., NATHAN, J., and CHARLES CARROLL (Ret.), Associate Judge.
NATHAN, Judge.
Plaintiff brothers Jordan and Alan Freedman appeal from a final judgment upholding the validity of certain gifts allegedly made by their father, Maurice Freedman, to the defendant, their brother Franklin. Appellants contend that their father never intended to relinquish dominion or control over the contested property and that the inter vivos transfers were the result of undue influence.
At the close of the plaintiffs' case during the nonjury trial, Franklin moved for a judgment in his favor on the grounds that the evidence did not establish plaintiffs' cause of action. The trial court judge stated that he was ready to direct a verdict for the defendant, but he reserved ruling pending the receipt of memoranda by counsel on the question of whether a certain certificate of deposit had to conform to the wills statutes. After considering the memoranda, the trial judge granted Franklin's motion and rendered judgment in his favor and against his brothers.[1]
Appellants contend that the trial court erred in directing a verdict at the conclusion of plaintiffs' case, since a prima facie showing of undue influence had been made. They further argue that the trial court should have set aside inter vivos transfers involving a house, stocks and a certificate of deposit, since their father had retained all dominion and control over the property and no interest was to vest in the defendant during the father's lifetime.
As to the question of undue influence, we feel that the trial judge properly directed a verdict for defendant at the close of plaintiffs' case. At the outset, we note that the burden of proof rests with the party claiming undue influence, Courington v. Courington, 120 So.2d 64 (Fla.2d DCA 1960), and such proof must be clear and convincing. See Murray v. Barnett National Bank of Jacksonville, 74 So.2d 647 (Fla. 1954). The facts here reveal that Maurice Freedman was extraordinarily concerned about the welfare of his son Franklin, due to the latter's poor medical background[2] and history of business failures. It was thus quite logical that Maurice would be more prone to provide for Franklin's needs than those of his brothers, who were better able to care for themselves. By comparison, it is uncontroverted that Maurice was mentally alert and very active right up until the time of his accidental death by drowning. Given the relative physical and mental strengths of the father and son, this can hardly be characterized as a case where the father's will was dominated by that of the son. See Wilkins v. Wilkins, 141 Fla. 188, 192 So. 791 (1940).
At best, it can be said that some sort of confidential relationship existed between Maurice and Franklin, to the extent that Maurice gave Franklin a general power of attorney. However, the record discloses *836 that Franklin played a minimal role in the conduct of his father's business affairs, since all major decisions were ultimately made or ratified by Maurice. Thus, we find that any presumption of undue influence was reasonably explained by Maurice's concern for his son's well being as well as what seems to have been an on-going attempt to impart some sort of business acumen to Franklin. See Majorana v. Constantine, 318 So.2d 185, 186 (Fla.2d DCA 1975), citing In re Estate of Carpenter, 253 So.2d 697 (Fla. 1971). In light of all these facts, we feel that the trial judge properly held that plaintiffs had failed to establish a case of undue influence.
Appellants further challenge the validity of certain inter vivos gifts, consisting of a house, stocks and a certificate of deposit. The common element to each challenge is that the transfers were made without any present interest vesting and with Maurice retaining all dominion and control over the respective property.
As far as the home is concerned, it seems clear that it was intended to be an inter vivos gift to Franklin. The house was deeded to Franklin and Maurice as joint tenants with a right of survivorship. Franklin and his wife and child lived in the house continuously, while Maurice resided there only intermittently. In addition, Franklin maintained the house and made all mortgage payments. The only testimony which might detract from the otherwise obvious validity of this gift was given by Franklin himself, wherein he stated his belief that his father wanted him to have title to the house after Maurice's death. This statement does not necessarily reflect a lack of present donative intent on the part of Maurice, for he was in fact a joint tenant with Franklin and it may well indicate merely that he intended Franklin to have sole legal title to the house after his death. However, we will not attempt to divine his meaning, for this was the province of the trier of fact, who apparently felt that all the evidence supported the finding of an inter vivos gift of the house. Having reviewed the record, we cannot say that he erred as a matter of law. See Lowry v. Florida National Bank of Jacksonville, 42 So.2d 368 (Fla. 1949).
The certificate of deposit presents a different question, since joint bank accounts with a right of survivorship  including certificates of deposit  are governed by Section 659.291, Florida Statutes. That section establishes a presumption that all interest in such an account is intended to vest in the survivor or survivors upon the death of one of the depositors. This presumption may only be overcome by proof of fraud or undue influence or by clear and convincing proof of a contrary intent. In addition, in the absence of such proof, all rights, title and interest are to vest in the survivor
"notwithstanding the absence of proof of any donative intent or delivery, possession, dominion, control, or acceptance on the part of any person, and notwithstanding the provisions hereof may constitute or cause a vesting or disposition of property or rights or interests therein, testamentary in nature, which, except for the provisions of this section, would or might otherwise be void or voidable."
Section 659.291(2), Fla. Stat. (1975).
As we have already noted, the trial court properly held that there was no undue influence affecting the transactions herein. Nor do we find any "clear and convincing proof" that Maurice did not intend to give Franklin a joint right to the account which would vest completely upon the death of Maurice, despite Franklin's belief that legal title to the money would not be his until after the death of his father. We therefore affirm the trial court's ruling with regard to the certificate of deposit.
The final challenge herein involves approximately $50,000 worth of stocks. While it is true that stock certificates were issued in the names of Maurice and Franklin as joint tenants, we feel that the other evidence with regard to the stock militates against the finding of a valid inter vivos gift. As with the other transactions, Franklin stated his belief that the stocks belonged to his father while he was alive. But here he further stated that his father *837 exercised control over the stock and received all the dividends. In addition, he testified that all ultimate decisions with regard to the investments were made by his father. We find this to be entirely consistent with our aforementioned views concerning the relationship between Maurice and Franklin, and yet totally incompatible with the idea that Maurice had yielded any dominion or control over the stock. Whereas an adroit business sense was not necessary to maintain the house nor even an issue with regard to the certificate of deposit, it is a critical factor where the management of a stock portfolio is concerned. Thus we find that Maurice never relinquished dominion or control over the stocks and hold that the trial judge erred as a matter of law in ruling that Maurice had made a valid inter vivos gift of the stocks to Franklin.
In holding as we do, we feel obliged to acknowledge the decisions of the Second District Court of Appeal in Maier v. Bean, 189 So.2d 380 (Fla.2d DCA 1966) and Kuebler v. Kuebler, 131 So.2d 211 (Fla.2d DCA 1961), which note that the creation of a joint tenancy in stock does not require a complete surrender of dominion and control. Nevertheless, as was pointed out in Kuebler, supra, "a present, irrevocable intent to make an inter vivos gift" is still necessary in such instances. Such intent must be "clear and unmistakable." Kuebler, 131 So.2d at 218. The facts of this case show no such intent.
The judgment of the trial court is affirmed with respect to the house and certificate of deposit and reversed with respect to the stocks, which stocks shall become a part of the estate of Maurice Freedman.
Affirmed in part and reversed in part.
NOTES
[1] At the close of plaintiffs' case, plaintiffs' counsel stated that he did not want the trial to conclude without an appropriate stipulation to the effect that there was no need to present the case for the defense; since it would only substantiate what the trial judge had declared to be his findings, counsel for both parties agreed that there was no need to present defense witnesses.
[2] In particular, Franklin had undergone two brain operations, one in 1959 and one in 1967, which had caused him periods of incapacitation.