PER CURIAM.
This is an appeal from a final order which determined two Sun Bank accounts —a money market account and a checking account — and one IDS Financial Services mutual fund account to be non-probate assets which passed outside a decedent’s estate. We reverse in part, affirm in part, and remand with direction to determine the money market and checking accounts to be assets of the estate and to proceed accordingly.
A review of the transcript from the hearing held to determine whether the accounts were probate assets reveals that after the death of Philip Heyes, the personal representative of the estate, Rea Quackenbush and his wife, Eileen Quackenbush (appellees herein) took for themselves, outside of the estate, $42,815.86 from the Sun Bank money market account. Appellees also paid themselves the sum of $121.60 when they closed the Sun Bank checking account and admit that they used the balance of $4,050.00 in the checking account to pay expenses of the estate and then reimbursed themselves from the estate for such expenditures. Appellees further received $34,082.53 from the IDS mutual fund account.
The personal representative testified that prior to Mr. Heyes’ death, he and his wife had no knowledge that they were named on decedent’s money market account; that although they had signed signature cards, they had paid no attention to what they were signing; that none of their personal funds were ever placed in the money market account; that they never withdrew any funds from the money market account during decedent’s lifetime; that all the income earned on the account was paid to decedent during his life; and that decedent had sole control over the money market account during his lifetime.
Further, the personal representative testified that other than appellees writing the occasional check or making an occasional deposit as a convenience for decedent during his lifetime, decedent retained control over the checking account while he was living; that appellees did not deposit any of their own funds into the checking account; that they wrote no checks for their own benefit from the checking account; and that any interest earned on the checking account during decedent’s life was paid to decedent.
As to the IDS mutual fund account, the personal representative testified that appel-lees neither placed any of their personal funds into such account nor did they withdraw any monies during decedent’s lifetime. Further, the personal representative admitted that appellees received none of the income from the fund during decedent’s lifetime and appellees exercised no control over the monies in the fund as decedent had sole control over those monies.
The record shows that the Sun Bank money market account signature card introduced into evidence consists of one (1) page which contains an “X” in the box at the bottom marked “Money Market”, but contains no “X” in the box marked “Joint”. The Sun Bank checking account signature card introduced into evidence contains two (2) pages, a front and a back. The front of the checking account signature card contains an “X” in the box marked “Checking”, but no “X” in the box marked “Joint Tenancy With Rights of Survivorship”. The reverse side of said signature card contains the following provision:
If this is a joint account depositors hereby agree, jointly and severally, with each other and with the bank, that all sums *379 now or hereafter on deposit to their credit as such joint depositors are and shall be owned by them jointly with right of survivorship and shall be subject to check or receipt of either of them or the survivor.
As to the IDS mutual fund account, the documents introduced into evidence contain no right of survivorship language. However, John Lewis Bellande, the investment salesman who sold the decedent the IDS mutual fund account testified that the decedent had wanted Rea and Eileen Quacken-bush to receive the assets of this investment fund in the event of his death. In addition, Mr. Bellande testified that the investment account was set up as a joint account with right of survivorship as his company had only two types of ownership and a specific request had to be made in order to establish the account as tenants in common — which request was not specifically made by decedent. When asked if “there is any question in your mind that Mr. Heyes wanted them [Mr. and Mrs. Quackenbush] to be the survivors?”, Mr. Bellande answered “None whatsoever. This was absolutely the way he wanted it.” Mr. Bellande further testified that he had also written an annuity for the decedent and that Mr. and Mrs. Quackenbush were listed as the beneficiaries thereof.
The appellant has raised four points on appeal. After considering them all, we opt to discuss three of the four points raised.
I.
First, appellant argues that the trial court erred in finding that the assets in the decedent’s Sun Bank money market account passed outside of the decedent’s estate to appellees on the authority of Teasley v. Blankenberg, 298 So.2d 431 (Fla. 4th DCA 1974), and Seidl v. Estate of Michel-sen, 487 So.2d 336 (Fla. 4th DCA 1986). We agree. Examination of the signature card for said money market account reveals that there is no language establishing a joint account with the right of survivor-ship as was the case in both Teasley and Seidl. Furthermore, the evidence showed that the decedent had sole control of the assets of said account during his lifetime; that appellees made no deposits or withdrawals on the account; and that appellees were not even aware of the existence of said account until after the death of the decedent.
The trial court’s reliance on Teasley and Seidl was inappropriate as those cases dealt with commercial bank accounts that were titled as joint tenancies with the right of survivorship. A review of those cases reveals that they dealt with bank accounts that were specifically set up as joint accounts with rights of survivorship unlike the account herein. In Teasley, the court noted that the
checking account ... was opened on July 26, 1967 in the form of a joint checking account with the right of survivorship.
298 So.2d at 432. In Seidl the court noted that the
original depositor held the title to all the applicable accounts and certificates of deposit solely in her own name, but upon falling ill with cancer was persuaded by a visiting nephew to alter that ownership to create with him joint tenancies with the right of survivorship.
487 So.2d at 336.
A case more factually similar to the instant case is Harrison v. Huber, 463 So.2d 1190 (Fla. 2d DCA 1985), in which
a certificate of deposit was opened at the Palm Harbor office of Sun Bank (a commercial bank) in the names of “James R. Leathers or Frank H. Harrison.” No language concerning survivorship was contained in the certificate of deposit.
Id. at 1190. The trial court therein found the opening of a certificate of deposit in a commercial bank in the names of “James R. Leathers or Frank H. Harrison” without any other language did not create a surviv-orship account. The Second District Court of Appeal reviewed the language of section 659.291, Florida Statutes (1979) (this section was renumbered effective July 1,1980, and is now section 658.56) which states in relevant part:
(1) Unless otherwise expressly provided in the signature contract card or other similar instrument delivered to and ac *380 cepted by a bank in connection with the opening or maintenance of an account, including a certificate of deposit, in the names of two or more persons, whether minor or adult, payable to or on the order of one or more of them or the surviving account holder or holders, all such persons and each person depositing funds in any such account shall be presumed to have intended that upon the death of any such person all rights, title, interest, and claim in, to, and in respect of, such deposits and account and the additions thereto, and the obligation of the bank created thereby, less all proper setoffs and charges in favor of the bank, shall vest in the surviving account holder or holders.
(2) The presumption herein created may be overcome only by proof of fraud or undue influence or clear and convincing proof of a contrary intent. In the absence of such proof, all rights, title, interest, and claims in, to, and in respect of, such deposits and account and the additions thereto, and the obligation of the bank created thereby, less all proper set-offs and charges in favor of the bank against any one or more of such persons, shall, upon the death of any such person, vest in the surviving account holder or holders, notwithstanding the absence of proof of any donative intent or delivery, possession, dominion, control, or acceptance on the part of any person and notwithstanding that the provisions hereof may constitute or cause a vesting or disposition of property or rights or interests therein, testamentary in nature, which, except for the provisions of this section, would or might otherwise be void or voidable.
The Second District Court found:
We are not persuaded by appellant’s position that the opening of an account in two names, even without survivorship language, automatically creates an account with right of survivorship. As we read the governing Statute [section 659.-291(1) Florida Statutes (1979) ], some language indicating survivorship is required to invoke the rebuttable presumption of survivorship.
Id. at 1191 (emphasis added) (citation omitted).
Appellees rebut appellant’s contention that Harrison is controlling authority herein by arguing that in Teasley and Seidl this court impliedly held that the presumption of rights of survivorship created by section 659.291, now section 658.56, Florida Statutes, arises irrespective of the use of any specific language establishing a joint account with rights of survivorship. A review of Teasley and Seidl fails to disclose, as appellees propose, that the mere opening of an account in two or more names without a provision in the signature card for survivorship rights establishes that said account vests in the survivor(s) upon the death of the primary account holder. Appellees, and the trial court, seem to have extended Teasley and Seidl far beyond the actual holdings of those cases. This court in Seidl noted that the statutory presumption of survivorship rights created by section 658.56, Florida Statutes, dealt with the rights of financial institutions and did not necessarily bind the parties between themselves. 487 So.2d at 338. Thus, even if one were to agree with appellees that a presumption of survivorship rights is created by section 658.56 in the absence of clear language to that effect, such presumption would merely protect a bank that disburses funds to the surviving account holder but would not be determinative of the rights of the deceased account holder’s estate as against the surviving account holder. We conclude the reasoning of Harrison v. Huber, 463 So.2d 1190 (Fla. 2d DCA 1985), is applicable to the facts of the instant case.
II.
Appellant next argues that the trial court erred in finding that the assets in the decedent’s Sun Bank checking account passed outside of the decedent’s estate to appellees on the authority of Teasley and Seidl. Appellant contends that an examination of the signature card for said checking account reveals that the area for designating the ownership of the account as a “Joint tenancy with rights of survivorship” *381 has no “X” mark. The following signature card was entered into evidence:
[[Image here]]
Appellant notes that the checking account signature card refers on its face to the fact that the parties are bound by the terms on its reverse side, but argues that the provision regarding rights of survivorship as to joint accounts on said reverse side is not applicable to the parties herein since no joint account was ever created. Appellant asserts that the same legal arguments that she raised as to the money market account are equally applicable to the checking account.
Appellees’ argument is that the fact that the account was opened in more than one name indicates on its face that it was opened in the joint names of all three signa-tors. In addition, appellees contend that the language on the reverse side of the signature card is controlling irrespective of the fact that there is no “X” in the box next to the “Joint Tenancy with rights of survivorship” language on the front of the signature card.
We disagree with appellees’ contention that the checking account herein was joint with rights of survivorship in favor of appellees. The same discussion of the Teasley and Seidl cases that was made regarding the decedent’s money market account is relevant as to decedent’s checking account. The only additional matter that requires discussion is whether the provision regarding joint accounts on the reverse side of the checking accounts signature card is relevant to the disposition of the assets herein. In our opinion, the fact that more than one person’s name appears on the account does not automatically make this a joint account. If this were the case, then there would be no need to designate on the front of the signature card whether the account was a “Joint Tenancy with rights of survivorship” as all accounts opened in more than one name would automatically be treated as joint accounts with rights of survivorship pursuant to the language on the reverse side. Again, we conclude that Harrison v. Huber, is dispositive of this point.
III.
Appellant finally argues that the trial court erred in ruling that the funds contained in the decedent’s IDS mutual fund account were the property of appel-lees as opposed to the property of decedent’s estate. According to appellant, the cases of Kuebler v. Kuebler, 131 So.2d 211 *382 (Fla. 2d DCA 1961), cert, dismissed, 139 So.2d 696 (Fla.1962), and Sullivan v. American Telephone and Telegraph Co., 230 So.2d 18 (Fla. 4th DCA 1969), are dis-positive of this issue in that they support her contention that decedent, at the time of creating the investment fund as a joint tenancy with right of survivorship, lacked the requisite present donative intent thereby defeating the creation of a gift inter vivos to appellees of the IDS mutual fund account. According to appellant, since decedent’s attempted transfer to appellees was in fact testamentary in character but lacked the requisite formalities of a testamentary disposition, then said attempted transfer was ineffectual and the funds became part of the estate. We disagree.
In Kuebler, an uncle had stock, previously held in his name and that of his nephew as joint tenants with right of survivorship and not as tenants in common. Upon the uncle’s death, the stock was considered part of his estate. The nephew thereafter claimed that the stock was being improperly held from him. At first the court held that the nephew’s claim was lacking as he had never had possession of the stock; was not to have possession until the uncle’s death and had not exercised any control of said stock. The Second District Court of Appeal noted that
[I]t is well settled that to effectively pass title by gift there must be a surrender of dominion over the res, coupled with the intent then and there to pass title. In other words, there must be an immediate vesting of some interest in the donee, complete, and irrevocable. If the donor withholds divestiture it is not a legal gift. A delivery which does not confer the present right to reduce the res into possession of the donee is insufficient. Thus, no gift is consummated where there is delivery to a third person, if it is clear that the third person is holding the property on behalf of the donor, who has no intention of divesting himself of control. If the intention of the donor is that nothing is to vest until his death, the transaction is testamentary in character and will fall unless it conforms with the formal requirements of the law relating to testamentary disposition of property.
Id. at 215 (citations omitted). On rehearing, the court held that where an instrument creates an estate of joint tenancy with right of survivorship there does not have to be strict compliance with rules relating to gifts inter vivos, as creation of such an estate does not require a complete surrender of dominion and control. Nevertheless, after reviewing the evidence submitted to it, the court determined that the uncle lacked present donative intent at the time the joint tenancy was created and, therefore, the stock was held to be part of the uncle’s estate.
In Sullivan, a mother had stock certificates issued in the names of herself and her son “as joint tenants with right of survivorship and not as tenants in common.” However, the mother retained sole possession of the stock; referred to it as solely her property; attempted to subsequently dispose of the stock to her grandson shortly before her death; and intended that nothing vest in the son until her death. This court found that the mother lacked donative intent at the time of the stock’s issuance and therefore found that the transaction was not an inter vivos gift but rather a testamentary transaction lacking in the requisite formalities. Thus, this court found that the stock was properly part of the mother’s estate.
Appellant contends that the evidence in the instant case, like that in Kuebler and Sullivan, supports a finding that the decedent lacked present donative intent at the time he had the IDS mutual fund account put in his name and the names of appellees. Appellant points out that at the hearing before the court, the appellees admitted that the decedent maintained complete control over the monies in this fund.
However, in ruling in favor of appellees, the trial court was persuaded by the investment salesman’s testimony that the decedent intended the investment fund to be set up with rights of survivorship in appellees, which evidence was substantial, competent evidence of the decedent’s present donative intent. In light of such evidence, we will *383 not disturb the trial court’s determination as to this account. Given the existence of such substantial, competent evidence in the record, this partial affirmance does not present a conflict with Kuebler or Sullivan. Thus, the IDS mutual fund account was properly determined to have passed outside of decedent’s estate.
GLICKSTEIN, DELL and STONE, JJ., concur.