FIRST NATIONAL BANK of Roland *v.* Desno RUSH
and Mary Anne Rush

CA 88-421                                            785 S.W.2d 474

Court of Appeals of Arkansas
Division I
Opinion delivered March 21, 1990

274

*Daily, West, Core, Coffman & Canfield*, by: *Douglas M. Carson*, for appellant.

*Kirkpatrick and Horan*, by: *Neal Kirkpatrick*, for appellee Mary Anne Rush.

GEORGE K. CRACRAFT, Judge. First National Bank of Roland, Oklahoma, appeals from a decision of the chancery court of Sebastian County refusing to set aside as fraudulent conveyances quitclaim deeds executed by Desno Rush. This appeal was originally filed in the Arkansas Supreme Court, which transferred the case to this court for decision.[1] We affirm.

In 1983, Bokoshe T.V. Cable, Inc., borrowed $60,000.00 from the appellant bank. Desno Rush and Ralph Lewis were the owners of all of the stock of that corporation. The loan was

---

[1] On recusal of Judge Mayfield, this case was resubmitted to the present members of this Division and assigned to this writer on February 21, 1990. The tape recording of the oral argument was available to all members of the Division.

secured by a security interest in the corporation's equipment and inventory. Prior to consummation of the loan, Desno Rush submitted to the bank a financial statement, which included as assets thirteen parcels of real estate owned by Rush and his wife, Mary Anne. Although the bank prepared papers for Lewis, Rush, and their wives, to personally guarantee the corporate note, for reasons that the bank could not explain, only Desno Rush signed the guaranty agreement.

When the note became in default in August, 1984, appellant filed suit against Desno Rush, Ralph Lewis, and Bokoshe T.V. Cable, Inc., and obtained judgment in January, 1985. In December, 1984, however, Rush had executed deeds conveying his interest in the thirteen lots to his wife, Mary Anne.

Shortly after the judgment was entered in Oklahoma, it was registered in Sebastian County, Arkansas. After attempts to collect on the judgment against Desno Rush in Sebastian County were unsuccessful, this action was brought to set aside the deeds to Mary Anne, as having been made with intent to defraud Desno's creditors.

After a trial, the chancellor found that all of the property in question had been purchased with Mary Anne's separate funds. He found that she owned and managed the property, and that Desno had no interest therein, other than "in name only." He further found that Mary Anne had no knowledge either of appellant's loan to Desno, that Desno had ever represented to a potential creditor that he held an interest in her property, or that any creditor of Desno's had ever relied upon her property when granting a loan to Desno. The chancellor then concluded:

> It is the Court's opinion from the facts, evidence and law that the [appellant] has failed to show fraud or intent to defraud, delay or hinder [appellant], a secured creditor of Desno Rush, and others, and that [appellant], even with entitlement to a presumption herein, the same has been rebutted and overcome by the testimony and evidence of the [appellees]. There was no intent on the part of either [appellee] to fraudulently convey property which rightfully and from its acquisition date belonged to Mary Anne Rush. It is understandable that Desno Rush's name was on the property, papers and accounts, but his interest was in

name only until the happening of some event to give him title by possession. Mary Anne Rush did not have and has no connection with Desno Rush's businesses and no connection with an obligation to [appellant]. It would be highly inequitable to take her property to satisfy someone else's claim under the facts and circumstances in this case, more so in view of the fact that there are other avenues of satisfaction unapproached by the creditor concerned.

Appellant argues that, as Desno was not only in debt but was insolvent at the time of the transfers, a conclusive presumption of fraud of creditors arose, and the chancellor erred in holding that Desno was not insolvent and that the presumption had been rebutted. The view we take of the matter makes it unnecessary for us to determine whether or not Desno was insolvent, because the presumption of fraud never arose under the facts as found by the chancellor.

■■ This court reviews chancery cases *de novo* on the record. However, we do not disturb the chancellor's findings of fact unless we find them to be clearly erroneous, giving due deference to the chancellor's superior position to judge the credibility of the witnesses and the weight to be given their testimony. *Hackworth* v. *First National Bank*, 265 Ark. 668, 580 S.W.2d 465 (1979); Ark. R. Civ. P. 52(a). We also will affirm a decree if it appears to be correct upon the record as a whole, even though the chancellor may have given, in whole or in part, the wrong reason for the result he reached. *Horton* v. *Koner*, 12 Ark. App. 38, 671 S.W.2d 235 (1984); *Frawley* v. *Smith*, 3 Ark. App. 74, 622 S.W.2d 194 (1981). Here, although we may not fully agree with all of the reasons stated by the chancellor, we conclude that he reached the correct result in holding that the conveyances were not fraudulent as to existing creditors of Desno Rush.

Desno and Mary Anne Rush were married in 1959. Mary Anne was a Korean national and Desno Rush was a career officer serving in the United States Army in the Republic of Korea. Mary Anne was from a wealthy family and had substantial sums of money on deposit in Korean banks prior to the marriage. Desno returned to the United States in 1971. At the time Mary Anne and their children joined him in Fort Smith, she transferred between $70,000.00 and $90,000.00 from her Korean bank to a

bank in Fort Smith. She controlled this money and used part of it to begin purchasing various rental properties. She continued to use these separate funds, along with subsequent rental income, to purchase the remainder of the thirteen lots in question. None of Desno's separate money went toward these acquisitions. The family's living expenses were paid with Desno's retirement income and Mary Anne's earnings from other employment.

Mary Anne testified that she was afraid that being an Asian female would cause people to take advantage of her, and that she had been advised by an attorney to take title to the property with her husband jointly, which she did. She also testified that, in order to assume loans on the properties, lending institutions required her to have Desno sign the notes and mortgages. There was no evidence of any intention by either spouse that Desno acquire any present interest in Mary Anne's property. Mary Anne testified that she maintained complete control over the property, collected the rents, and made all arrangements with regard to it. Desno went his separate way and engaged in entirely different business pursuits. Mary Anne had specifically instructed Desno not to use her property to borrow money, and he had promised her that he never had and never would. She knew nothing about his cable television business, was not aware of the loan made in Oklahoma, and had no knowledge that the suit had been filed against Desno or that judgment had been entered.

Mary Anne testified that as early as 1981 she had demanded that Desno convey his interest in the lots to her and that she had threatened to divorce him if he did not do so. She testified that they were having marital difficulties and that he had promised to execute the conveyances several times before the Oklahoma problems arose. Desno testified that Mary Anne had insisted on the conveyances and that he had conveyed the property to her solely in exchange for her agreement not to divorce him or expel him from the house.

■ Our law of fraudulent conveyances is well settled. When a financially embarrassed debtor conveys his property to a near relative or member of his household, the conveyance must be looked upon with suspicion and scrutinized with care. If the evidence shows the conveyance to be voluntary, it is prima facie fraudulent as to existing creditors. If the debtor is insolvent and

unable to pay his debts, the presumption that the conveyance is fraudulent as to antecedent creditors is conclusive. *Brady* v. *Irby*, 101 Ark. 573, 142 S.W. 1224 (1912); *Rudy* v. *Austin*, 56 Ark. 69, 19 S.W. 111 (1892).

Not every conveyance from an insolvent husband to his wife or other member of his family is deemed fraudulent, however. There also must be a showing of some injury to the person complaining; the creditor must show that his debtor has disposed of property that might otherwise have been subjected to the satisfaction of his debt. *McCown* v. *Taylor*, 186 Ark. 273, 53 S.W.2d 434 (1932); *Mente & Co., Inc.* v. *Westbrook*, 181 Ark. 96, 24 S.W.2d 976 (1930); *Quachita Electric Cooperative Corp.* v. *Evans-St. Clair*, 12 Ark. App. 171, 672 S.W.2d 660 (1984). Therefore, if Desno's interest in the thirteen lots was not one that could have been subjected to the payments of his debts, the conveyances would not be fraudulent.

Ordinarily, when property is purchased in the name of one person with money furnished by another, a resulting trust arises in favor of the person furnishing the purchase money. *Waller* v. *Waller*, 15 Ark. App. 336, 693 S.W.2d 61 (1985); *Andres* v. *Andres*, 1 Ark. App. 75, 613 S.W.2d 404 (1981); Restatement (Second) of Trusts § 440 (1959). Under such circumstances, the person furnishing the consideration for the purchase is said to have all of the beneficial or equitable interest in the property, with the person into whose name the property was transferred having only bare, legal title. Subject to certain exceptions not applicable here, the trustee's interest is not sufficient to allow a personal creditor of the trustee to obtain satisfaction of his claim out of the trust property. *See* G. Bogert, *The Law of Trusts and Trustees*, § 466 (rev. 2d ed. 1977); 76 Am. Jur. 2d *Trusts* § 192 (1975).

In *Seib's Hatcheries* v. *Lindley*, 111 F. Supp. 705 (W.D. Ark. 1953), relied upon by appellee, a number of transfers from a judgment debtor to his wife were sought to be set aside as fraudulent as to creditors. One such transfer involved assets that the court found to have been purchased by the husband with funds provided entirely by his wife. The court, citing *Jenkins* v. *Smith*, 170 Ark. 806, 281 S.W. 377 (1926), and other Arkansas decisions, applied the principle that, when a husband takes title to

property purchased with his wife's money, the wife ordinarily becomes the equitable owner of such property. The court concluded:

> The transfers by the defendant, F.M. Lindley, to his wife, Mrs. Willie Lindley, of the Illinois Central Railroad Company and the Southwest Line Company note and mortgage, were not voluntary transfers. Mrs. Willie Lindley used her own money to purchase these items, and F.M. Lindley acted merely as her agent in purchasing them. Ms. Lindley paid a good and valuable consideration and was at all times the equitable owner; *F.M. Lindley at no time had more than a bare, legal title to these two items. Therefore, these two transfers were not fraudulent.*

*Sieb's Hatcheries*, 111 F. Supp. at 717 (emphasis added). *See Hall* v. *Weeks*, 214 Ark. 703, 217 S.W.2d 828 (1949); *Jenkins* v. *Smith, supra. See also* 37 C.J.S. *Fraudulent Conveyances* § 170 (1943).

The fact that title to property is taken in spouses' joint names does not necessarily alter the result. When property is taken in the joint names of husband and wife, and the consideration has been furnished by one of them, there is a presumption of a gift to the other from the one furnishing the consideration. *Jones* v. *Wright*, 230 Ark. 567, 323 S.W.2d 932 (1959). This presumption, although a strong one, may be overcome by clear and convincing proof that no such gift was intended. *Lofton* v. *Lofton*, 23 Ark. App. 203, 745 S.W.2d 635 (1988); *Lyle* v. *Lyle*, 15 Ark. App. 202, 691 S.W.2d 188 (1985). Clear and convincing evidence is evidence by a credible witness whose memory of the facts about which he testifies is distinct, whose narration of the details is exact and in due order, and whose testimony is so direct, weighty, and convincing as to enable the factfinder to come to a clear conviction, without hesitance, of the truth of the facts related. It is simply that degree of proof that will produce in the trier of fact a firm conviction of the allegations sought to be established. Our test on review is not whether we are convinced that there was clear and convincing evidence to support the trial judge's finding, but whether we can say that the finding is clearly erroneous. *Akin* v. *First National Bank*, 25 Ark. App. 341, 758 S.W.2d 14 (1988).

Here, the only testimony with regard to these factual

matters was given by Mary Anne and Desno Rush. Although the testimony of an interested party is never considered uncontradicted or uncontroverted, this does not mean that the trial court must reject the uncorroborated testimony of an interested witness when it finds the testimony to be worthy of belief. *Norman* v. *Norman*, 268 Ark. 842, 596 S.W.2d 361 (Ark. App. 1980).

Mary Anne testified clearly and unequivocally that the money used to purchase the lots was her separate property, and that none of the property was purchased with monies belonging to Desno. She stated that she had been advised by an attorney to take the title in both names to enable her to escape problems that she envisioned would result due to her Asian background. She testified that Desno had promised her that he would never use that property to obtain a loan. She also testified that she knew nothing about the business of the cable company, the loan from appellant, or the lawsuit in Oklahoma. Desno confirmed that she was without that knowledge, and he made no claim to having any interest in Mary Anne's property.

The chancellor found this testimony to be credible and true, and that Mary Anne owned the property, that Desno's interest therein was "in name only," and that Desno was motivated to convey his bare legal title by fear of divorce, rather than with intent to defraud his creditors. From our *de novo* review, we cannot conclude that the findings of the trial court are clearly erroneous. In light of those findings, we conclude that the correct result was reached.

Affirmed.

CORBIN, C.J., and JENNINGS, J., agree.