**In re David Frederick GOLDSTEIN,
Debtor.**

**Bankruptcy No. 91–31115–BKC–RAM.**

United States Bankruptcy Court,
S.D. Florida.

Jan. 13, 1992.

Kenneth S. Rappaport, Boca Raton, Fla., for debtor.

Daniel L. Bakst, Ackerman, Bakst, Cloyd & Scherer, P.A., West Palm Beach, Fla., Chapter 7 Trustee.

### ORDER DENYING TRUSTEE'S APPLICATION FOR TURNOVER

ROBERT A. MARK, Bankruptcy Judge.

This cause came before the Court on July 30, 1991 on the Application for an Order Directing First Federal of the Palm Beaches ("First Federal") to turn property over to the Chapter 7 Trustee, Daniel L. Bakst. At the hearing, the parties agreed to submit stipulated facts and memoranda briefs to the Court in lieu of oral argument and live testimony. The Court set a deadline of August 17, 1991 for the memoranda which was later extended to August 30, 1991.

The respective memoranda together with a statement of stipulated facts were timely filed.

The property in dispute is a Certificate of Deposit ("CD") at First Federal styled as a Joint Account with Right of Survivorship. The Debtor is one of the four individuals named on the account. The Trustee claims that the Debtor's interest would be subject to execution under Florida law and therefore is property of the bankruptcy estate subject to turnover to the Trustee. The Debtor argues that the CD was actually held by the Debtor as a resulting trust for the benefit of the other parties named on the account and is not property of the estate subject to turnover. After a thorough review of the record the Court finds clear and convincing evidence to establish that the Debtor's interest was in the nature of a trustee of a resulting trust. Thus, the money held in the CD is not the Debtor's property within the definition of 11 U.S.C. § 541 and is not subject to turnover to the Trustee.

## STIPULATED FACTS

The parties have stipulated to the following facts:

1. Debtor filed his Chapter 7 petition on April 23, 1991.

2. Debtor listed in his Statement of Financial Affairs and in his schedules at B–2(b) and B–4, a Certificate of Deposit in the approximate amount of $30,000.00.

3. On or about November 2, 1979, Debtor opened a Savings Account at Coral Gables Federal. The account was opened in the names of "Natan Kirpitznikoff and David Goldstein as Trustees for Ora Kirpitznikoff, Dan Kirpitznikoff, Ram Kirpitznikoff and Guy Kirpitznikoff". The Kirpitznikoffs reside in Israel.

4. On or about November 9, 1979, upon the direction of Natan Kirpitznikoff, the children, Ora, Dan, Ram, Guy, were removed from the account, the savings was converted to a CD, and a new signature card was signed.

5. On or about May 10, 1984 the account at Coral Gables Federal was closed and a new CD and Passbook account were opened at First Federal of the Palm Beaches, where it has remained.[1]

6. The CD and Passbooks are now in the names of "Dan Kirpitznikoff or Natan Kirpitznikoff or Ora Kirpitznikoff or David Goldstein".

7. As interest accumulated in the Passbook account, Debtor would transfer such sums to the CD, or close the Passbook and transfer the entire amount to the CD.

8. Debtor set up the CD with funds which belonged exclusively to the Kirpitznikoffs as a favor to the Kirpitznikoffs, who had a desire to maintain funds in the United States, due to the fact that their son, David Kirpitznikoff, was in military service and required funds while in the United States.

9. Debtor has never deposited any of his own personal funds into the CD, has never used any of the funds in the CD for his own purposes, nor has Debtor referred to or thought of the account as his own.

10. Debtor's name appears last on the CD account and the CD bears the social security number of Dan Kirpitznikoff.

11. Debtor served as caretaker of the CD and disbursed funds only in accordance with the instruction of the Kirpitznikoffs.

12. Only one signature is required to withdraw funds from the account.

## DISCUSSION

Section 542 of the Bankruptcy Code provides for turnover "of property to the trustee that the trustee may use, sell or lease under § 363." Section 363(b) provides that the trustee, after notice and hearing may use, sell or lease property of the estate. As described in § 541, property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." § 541(a)(1).

1. The Court has received and reviewed copies of all signature cards and CD statements attached as exhibits to the Debtor's memorandum.

The Trustee argues that since Goldstein's name is on the account, the CD should be considered property of the estate under § 541. The Trustee's position is that under Florida law, property held as joint tenants with rights of survivorship is subject to execution on a judgment and therefore subject to turnover pursuant to section 542. *Hurlbert v. Shackleton,* 560 So.2d 1276, 1278 (Fla. 1st DCA 1990); *McDowell v. Trailer Ranch, Inc.,* 421 So.2d 751 (Fla. 4th DCA 1982). Since the CD's signature card is styled "joint tenants with rights of survivorship," the Trustee argues that the Debtor must have intended to maintain the CD account as such and the Court need not look further to determine the form of the account.

The Trustee's argument is simple and straightforward but I disagree. Based upon the stipulated facts, I agree with Debtor's contention that the money is held by him as trustee of a resulting trust, not as a joint tenant. Therefore, the funds are not subject to turnover.

■ For a CD to be maintained as a "joint tenancy with rights of survivorship" not only must the signature card contain an agreement in clear and unambiguous language to that effect, but there must also be the absence of clear evidence to the contrary that at the time of execution of the account a different form of account was intended. *In re Nunley,* 19 B.R. 785, 787 (Bankr.E.D.Tenn.1982). That contrary evidence existed in *Nunley* and is present in this case as well.

■ In *Nunley* the debtor and her son held a joint bank account with signature cards styled "right of survivorship". Bankruptcy Judge Bare found that although the account agreement appeared unambiguous, uncontroverted evidence was presented that the Debtor understood that she would only withdraw funds from time to time at the request of the true owner of the funds, her son. Her intent was not to have an ownership interest in the account and the account was found not to be property of the estate. Similarly, in this case the Court finds that the Debtor never intended to maintain an ownership interest in

this CD even though the CD's account agreement describes the account as joint tenancy with rights of survivorship. He did not deposit any of the money nor ever withdraw any money for his own use.

If a debtor does not have a right to possess or use the property for his own benefit at the commencement of the case, the trustee cannot acquire such rights through a turnover action. *Bernstein v. Sommer (In re Sommer),* 28 B.R. 95, 96 (Bankr.D.Colo.1983). The Debtor here only had the intent to hold an interest in the CD for the benefit of the Kirpitznikoffs. Therefore, I conclude that the Debtor's interest is that of a trustee of a resulting trust, an interest which is not property of the estate.

■ A resulting trust may arise in personalty. *Grapes v. Mitchell,* 159 So.2d 465, 467 (Fla.1963). To create a resulting trust it is essential that the parties intend to create the trust relationship but fail to execute documents or establish adequate evidence of the intent. *Wadlington v. Edwards,* 92 So.2d 629 (Fla.1957). "[A] vital element is the intention which will be presumed from the facts." *Smith v. Smith,* 143 Fla. 159, 196 So. 409 (1940).

The Debtor's interest in the CD funds in this case is consistent with the elements of a resulting trust. As defined in *First National Bank of Denver v. Harry W. Rabb Foundation,* a resulting trust is

"... one in which a party, through no actual or constructive fraud, becomes invested with legal title, but holds that title for the benefit of another ..."

*First National Bank, Id.* 29 Colo.App. 34, 39, 479 P.2d 986, 987 (1970).

The stipulated facts in this case show that Natan Kirpitznikoff intended to create a trust for members of his family using the Debtor as a trustee of the funds. According to the facts presented, the money presently in the CD was exclusively property of the Kirpitznikoffs prior to the creation of the CD. There is no evidence to refute the conclusion that Goldstein opened the account exclusively for the benefit of the Kirpitznikoffs. The Debtor never received

a personal benefit from the money even though his name was on the account and he could withdraw funds using only his signature. It would be inequitable to allow the creditors of his estate to share in funds that Goldstein never thought of as his own.

 The fact that Goldstein never changed the language on the signature card to specify that the CD is an express trust does not change this Court's finding that the funds belong to Dan, Natan and Ora Kirpitznikoff, not to the Debtor. A resulting trust may be created by deed or may rest entirely in parol, or may be partly in writing and partly in parol." *Bay Biscayne Co. v. Baile*, 73 Fla. 1120, 75 So. 860 (1917). Here, the resulting trust was clearly established from the parol evidence presented. Thus, the CD held at First Federal in the approximate amount of $30,000.00 is not property of the Debtor's estate. Therefore, it is—

ORDERED AND ADJUDGED that the Trustee's application for turnover is hereby denied.

DONE and ORDERED.