In re Peggy Carroll COWDEN.

**David H. COWDEN IV and John Kenneth Cowden, Plaintiffs,**

v.

**Richard L. RAMSAY, Trustee for the Estate of Peggy Carroll Cowden, Debtor, Defendant.**

**Bankruptcy No. 89–41679S.**
**Adv. No. 92–4095.**

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

April 7, 1993.

---

Katherine Gay, Fayetteville, AR, for plaintiffs.

Richard Ramsay, Little Rock, AR, for Trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

MARY D. SCOTT, Bankruptcy Judge.

The Complaint for Declaratory Judgment and Petition for Turnover of Property, filed on June 30, 1992, by the sons of the debtor, was tried before the Court on February 9, 1993. The sons seek a declaration that certain funds are not property of the estate. The trustee asserts that the debtor holds both legal and equitable title to the funds such that the funds are property of the estate.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 1334. Moreover, this Court concludes that this is a "core proceeding" within the meaning of 28 U.S.C. § 157(b) as exemplified by 28 U.S.C. § 157(b)(2)(A).

In anticipation of a divorce, David Cowden III cleaned out the joint accounts and safety deposit boxes he held with his wife, Peggy Carroll Cowden. His children held accounts titled "David H. Cowden IV, minor, by David Cowden III and Peggy Cowden" and "John Kenneth Cowden, minor, by Peggy Cowden." Fearing that he would also appropriate the children's accounts, Peggy Cowden changed the name on David Cowden IV's account to remove

her husband's name from that account. The funds in these two accounts, later converted to a certified check, are the subject of this litigation.

The boys opened their accounts several years prior to the parents' divorce and subsequent bankruptcies. Worthen Bank (the "Bank") would not permit them, as minors, to open the accounts solely in their name. An officer of the bank testified that the bank required the parent or guardian also be named on a child's account, and that only the parent could make withdrawals from the account.[1] Accordingly, Peggy Cowden made withdrawals from time to time at her sons' request. The testimony was uncontroverted that she considered the monies her sons' property. She made no withdrawals for herself, but only withdrew funds, at her sons' requests, for their personal wants.

The testimony was uncontroverted that the deposits into the sons' accounts were solely their property. The deposits consisted of monies the boys earned working at a grocery store and received as gifts. The relatively small amounts of the deposits, and the small amounts at issue,[2] corroborate this testimony.

When the father pilfered the marital accounts, Peggy Cowden, with her son's permission, closed the account titled "David H. Cowden IV, minor, by David Cowden III and Peggy Cowden" and reopened it in the name "David H. Cowden IV, minor, by Peggy Cowden," thereby removing the father's name from the account. Later, fearing that her creditors would garnish the boys' accounts, the debtor, with the permission of the boys, closed both accounts. She feared that inasmuch as her name was on the accounts, creditors would attempt to reach the funds belonging to her children. Later, still unsure how to protect her sons,

and unable to reach her attorney by telephone, the debtor had a certified check issued in her name and placed the check in a safety deposit box. When her bankruptcy case was filed, the debtor listed the existence of this check in her schedules.

The debtor does not dispute that at all times she had legal access to the funds. Indeed, the bank's policy provided that only she could withdraw the funds. Debtor does not dispute that the certified check was issued solely to her. At all times she has had power over the funds. The evidence is also uncontroverted that the monies belong, in equity, to the children. The debtor testified that while she had the power to spend the money, that she had not and would not spend the boys' funds. She stated: "It's not my money. It's never been my money."

Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). Property of the estate is also limited to interests of the debtor:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest ... becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(d).

While federal bankruptcy law determines the effect of legal or equitable interests in property, *N.S. Garrott & Sons v. Union Planters National Bank (In re N.S. Garrott & Sons)*, 772 F.2d 462, 466 (8th Cir.1985), the Court looks to state law to determine the nature and extent of the interest, *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *In*

---

**1.** While upon cross-examination the Bank officer admitted that it may not legally be able to enforce in every instance this "preference," the testimony indicated that this "preference" was a stringent rule.

**2.** The trustee made several comments regarding the "small" amount of the funds which are the subject of this litigation. It is true that the amounts are relatively small. Indeed, this

Court has previously commented that litigation over meager amounts may be wasteful. *Smith v. Worthen National Bank (In re Smith)*, 145 B.R. 618, 619 n. 1 (Bankr.W.D.Ark.1992). However, to an 18–year old college student whose tuition for next quarter is soon due, and to a 14–year old child, the amounts are not at all "small."

re *N.S. Garrott & Sons,* 772 F.2d at 466. Accordingly, Arkansas law determines the nature and extent of the debtor's interest in the certified check. Under federal bankruptcy law, the estate succeeds only to the title and rights in property the debtor had at the time of the filing of the petition in bankruptcy. *In re N.S. Garrott & Sons,* 772 F.2d at 467.

▆▆▆ It is clear that the debtor holds a legal interest in the funds: the certified check is made payable to the order of Peggy Carroll Cowden. She has at all times had access to the funds. Under Arkansas law, however, the funds are protected by a resulting trust,[3] which arises when a party becomes invested with legal title, but holds that title for the benefit of another. *See First National Bank of Roland v. Rush,* 30 Ark.App. 272, 785 S.W.2d 474 (1990). Under Arkansas law, a creditor of the legal owner cannot reach the property subject to a resulting trust. *Id.,* 785 S.W.2d at 478 (the resulting "trustee's interest is not sufficient to allow a personal creditor of the trustee to obtain satisfaction of his claim out of the trust property.").

▆▆ Under the facts before the Court, a resulting trust existed with respect to the boys' monies. This is true regardless of the manner in which the funds were held—in a minor's account from which only debtor could make withdrawals, in a certificate of deposit, or a certified check made payable to the debtor. The evidence is credible and uncontroverted that the monies were earned or given directly to the boys. All parties considered the funds as belonging to the boys. Despite her financial woes, the debtor did not use the funds because they were not hers to take. The debtor's sons hold equitable title to the certified check; the debtor's legal title is impressed with the duty to reconvey it to the rightful owners.

▆▆ It makes no difference in the analysis that the facts of *Garrott & Sons* involve a constructive trust. Under state law, the debtor holds only "bare legal title," whether as a result of a constructive trust or a resulting trust. Since the debtor held, under state law, only bare legal title which was subject to the duty to reconvey it to the rightful owner, the estate holds only that interest which is also subject to the duty to convey it to the rightful owners, the children of the debtor. *See Garrott & Sons,* 772 F.2d at 467; *see also In re Goldstein,* 135 B.R. 703 (Bankr.S.D.Fla. 1992) (checking account opened for sole benefit of another was not property of the estate although debtor had access to the account); *In re Altchek,* 124 B.R. 944 (Bankr.S.D.N.Y.1991) (proceeds from property held in trust excluded from estate). Thus, while bare legal title to the funds is property of the estate, the estate has no equity in the property to be liquidated for the benefit of creditors. *See Garrott & Sons,* 772 F.2d at 467 (funds subject to turnover had to be remitted to beneficiaries). Accordingly, bare legal title to funds in the certified check in the amount $1,929.57 is property of the estate. However, the estate has no equitable interest in the check such that the trustee should abandon the estate's interest in the check.

At trial, it came to the Court's attention that there is difficulty in rendering judgment for both plaintiffs. The action was filed by David H. Cowden IV and John Kenneth Cowden, both of whom were minors at the time of the filing of the suit. David Cowden IV attained his majority, Ark.Code 9–25–101, during the pendency of the proceedings and by pursuing the action has ratified the proceedings. *See Coca-Cola Bottling Co. v. Davidson,* 193 Ark. 825, 102 S.W.2d 833 (1937). John Cowden, however, is only 15.

---

**3.** This is only one variety of implied trusts imposed by virtue of law where the benefits of property title do not go with the legal title. *Andres v. Andres,* 1 Ark.App. 75, 613 S.W.2d 404 (1981). Constructive trusts are generally imposed where fraudulent conduct of the legal owner exists such that retention by the legal owner is unjust. *See, e.g., In re N.S. Garrott &*

*Sons,* 772 F.2d 462. Resulting trusts exist where property is purchased in the name of one person with money furnished by another. *Andres,* 613 S.W.2d at 406; *First National Bank of Roland v. Rush,* 30 Ark.App. 272, 785 S.W.2d 474, 478 (1990). There is no requirement that fraud be shown for a resulting trust to exist. *See Rush,* 30 Ark.App. 272, 785 S.W.2d at 478.

Under Arkansas law, suits by minors must be brought by their next friend. Ark.R.Civ.Proc. 17(b); Ark.Code 16–61–103. While incapacity may be waived by an opposing party, *Obennoskey v. Obennoskey*, 215 Ark. 358, 220 S.W.2d 610 (1949), this particular case raises concerns. As a minor, John Cowden may sue only by his next friend, a person cloaked in the appropriate authority. Counsel indicated that the father has physical custody of John Cowden. Further, although John Cowden was under subpoena, the father refused to permit his son to appear. Clearly the father wants his children to have no part in this lawsuit, albeit at the cost of the children's savings.

The concern of the Court is not merely a formal one. The precepts with which the Court is concerned are designed to protect minors. Further, rules regarding parties, in general, serve to prohibit collusive suits and suits by "officious intermeddlers." *See, e.g., Duvall v. Humphrey*, 153 F.2d 798 (D.C.Cir.1946). The Federal Rules of Civil Procedure and judicial doctrine set forth three distinct concepts regarding ability to file suit. The issue of standing, whether plaintiff is the person injured, is not at issue here: John Cowden is clearly the person harmed by trustee's attempt to obtain his funds. Accordingly, there is no standing issue which raises jurisdictional questions.

John Cowden is also the real party in interest in this suit because it is he who holds, under substantive law, the right to the funds. *See Mason–Rust v. Laborers' Int'l Union of North America*, 435 F.2d 939 (8th Cir.1970); Fed.R.Civ.Proc. 17(a). The instant suit by or on behalf of John Cowden has merit: the funds at issue clearly belong to him and should not be appropriated by the trustee. This situation is thus distinguishable from the case in which an "officious intermeddler" comes in to stir up strife and litigation. Indeed, the debtor's intervention "was not officious but appropriate." *Duvall v. Humphrey*, 153 F.2d 798, 799 (D.C.Cir.1946).

The problem in the instant case is solely one of capacity, the question of who has the right to litigate. *See Beam v. Monsanto Co.*, 414 F.Supp. 570 (W.D.Ark.1976) ("Capacity to sue depends on whether the person who is bringing suit has authority to use the courts of the jurisdiction in question. This is a problem of power and depends neither on the court involved nor on the cause of action asserted."). Under Rule 17(b) the capacity to sue is determined by the law of the individual's domicile. Infants must sue by their next friend or guardian *ad litem* who may be appointed by the court. Fed.R.Civ.Proc. 17(c). The court may "make such other order as it deems proper for the protection of the infant." *Id.; Accord M.S. v. Wermers*, 557 F.2d 170, 174 (8th Cir.1977) ("Appointment of a guardian ad litem is considered to be discretionary under the Federal Rules, provided the District Court enters a finding that the interests of the minor are adequately protected in the event it does not make such appointment.... Regardless of whether state or federal law should be applied, the District Court was bound to consider the appointment of a guardian ad litem for the minor plaintiff and clearly has the power to appoint one in her behalf."). The presence of John Cowden's mother, although not named in the action, sufficiently protects the interests of the minor child. *See Laundry Workers Union v. Mahoney*, 491 F.2d 1029 (8th Cir.) (en banc), *cert. denied*, 419 U.S. 825, 95 S.Ct. 42, 42 L.Ed.2d 49 (1974). The Court notes that the boys' case was prosecuted by their aunt, sister to the debtor. Accordingly, additional protection of John Kenneth Cowden's interest existed.[4]

Finally, the court notes that any issues regarding capacity were expressly waived by the trustee. Since the only impediment to suit by John Cowden was one of capacity, the Court may enter judgment in favor of the minor child John Cowden. *See Obennoskey v. Obennoskey*, 215 Ark. 358, 220 S.W.2d 610 (1949).

---

4. Counsel was candid with the Court, advising the Court of pertinent facts regarding the relationships of the interested persons and the views of the boys' father.

**ORDERED** that judgment shall be entered in favor of the plaintiffs.

**IT IS SO ORDERED.**

### *JUDGMENT*

This action came on for trial before the Court, Honorable Mary Davies Scott, U.S. Bankruptcy Judge, presiding, and the issues having been duly tried and a decision having been duly rendered,

**It is Ordered and Adjudged** as follows:

1. The bankruptcy estate holds legal title to the subject funds, consolidated in certified check No. 174072 in the amount of $1,929.57, but holds the fund subject to a duty to convey the property to the equitable owners, plaintiffs David H. Cowden IV and John Kenneth Cowden.

2. The estate's interest in the subject funds, consolidated in certified check No. 174072 in the amount of $1,929.57, is of such inconsequential value and benefit to the estate that the trustee is directed to abandon the funds to plaintiffs David H. Cowden IV and John Kenneth Cowden, 11 U.S.C. § 554(b), in the manner set forth in paragraph 3, below.

3. The trustee shall deliver certified check No. 174072 to the debtor Peggy Carroll Cowden within fifteen (15) days of entry of this Order. The debtor Peggy Carroll Cowden shall ensure that the plaintiffs David H. Cowden IV and John Kenneth Cowden receive their respective shares of the funds.

**It is so Ordered.**