705 So.2d 57 (1997)
Dorothy MULATO, Appellant/Cross-Appellee,
v.
Edward MULATO, Appellee/Cross-Appellant.
No. 96-3402.
District Court of Appeal of Florida, Fourth District.
December 24, 1997.
*59 John H. Pelzer and Daniella Friedman of Ruden, McClosky, Smith, Schuster & Russell, P.A., Fort Lauderdale, for appellant/cross-appellee.
Anthony J. Titone, Fort Lauderdale, for appellee/cross-appellant.
DONNER, AMY STEELE, Associate Judge.
George and Isabelle Mulato were married for over fifty years. They had two children, Dorothy and Edward. In 1977, George and Isabelle each executed their last will and testament. Each left his or her entire estate to the other, and if the other did not survive, in equal shares to Dorothy and Edward. Shortly thereafter, George died. Since the vast majority of the couple's assets were bank accounts and stock certificates held jointly in their names with rights of survivorship, most of George's assets did not pass through probate.
After George's death, Isabelle opened a number of checking and certificates of deposit accounts titled jointly in the names of Isabelle, Dorothy or Edward, with rights of survivorship. Over the next several years, Isabelle changed the title on many of these accounts.
In April 1994, Isabelle died. At the time of her death, three of these original accounts remained open, titled jointly in the names of Dorothy and Isabelle, with rights of survivorship. Dorothy closed these accounts after Isabelle's death and retained the monies. In addition to the three original accounts, two other accounts were in existence at the time of Isabelle's death. One account was titled in the names of Isabelle, Dorothy or Edward, with rights of survivorship, and the other was originally opened in the names of Isabelle in trust for Edward, but title was changed to Isabelle or Dorothy with rights of survivorship. Edward, claiming an interest in both these accounts, froze them.
On her own, Dorothy opened seven accounts, titled jointly in her own name and in Edward's name with rights of survivorship. Shortly after his mother's death, Edward placed a stop order on these seven accounts as well. At the time of trial, six accounts remained frozen in the family bank, five in the names of Dorothy and Edward, and one in the names of Isabelle, Dorothy and Edward with rights of survivorship. The trial court determined that Edward was entitled *60 to one-half of the funds remaining in these six accounts.
The parties also disputed ownership of various stocks held jointly either in the names of Isabelle, Dorothy and Edward, or only Dorothy and Edward. Edward also challenged the sale of some Bell South stock sold prior to Isabelle's death. The stock was held jointly by Isabelle, Dorothy and Edward, but Edward's name was forged on the sell order, and the sale was effectuated without his knowledge. The check for the proceeds from the sale arrived a few days after Isabelle's death, but Edward never received his share of the payment. The trial court ordered that Edward was entitled to one-half of all stocks held jointly, and reimbursement for one-half of the proceeds of the Bell South stock.
Edward also claimed that two deeds quitclaiming Isabelle's interest in a condominium and a multiple dwelling unit to Dorothy were the product of undue influence, and that his mother was not capable of transferring her interest because she lacked present intent. The trial court found both deeds valid.
Dorothy Mulato appeals the final judgment awarding her brother, Edward Mulato, one-half of the bank accounts and stocks held jointly in their names, and $10,000 of money withdrawn by Dorothy from accounts titled in the names of Dorothy and Isabelle Mulato. Dorothy also appeals the trial court's award to Edward of one-half of the proceeds of the sale of the Bell South stock, and she challenges the trial court's refusal to grant her attorney's fees incurred in defending Edward's civil theft claims. Edward cross-appeals, claiming the trial court erred in refusing to award him treble damages and attorney's fees on his civil theft claim, as well as refusing to set aside the quit-claim deeds executed by Isabelle before her death.
We affirm the trial court as to its decision on the quit-claim deeds, attorney's fees, civil theft claim and stock held jointly in the names of Dorothy, Edward and their mother. However, we reverse the trial court's award to Edward of $10,000 of the money Dorothy withdrew from the accounts held in the names of Dorothy and Isabelle, as well as the trial court's award to Edward of one-half the stock and bank accounts, held jointly by Dorothy and Edward with rights of survivorship.

DOROTHY'S SURVIVORSHIP ACCOUNTS
The trial court awarded Edward $10,000 of the monies Dorothy withdrew from accounts held in the names of Dorothy and Isabelle, with rights of survivorship. Dorothy maintains on appeal that she is entitled to all the proceeds from these accounts, by virtue of her survivorship rights. According to section 655.79, Florida Statutes (1995):
[A] deposit account in the names of two or more persons shall be presumed to have been intended by such persons to provide that, upon the death of any one of them, all rights, title, interest, and claim in, to, and in respect of such deposit account ... vest in the surviving person or persons.... The presumption created in this section may be overcome only by proof of fraud or undue influence or clear and convincing proof a contrary intent. ... notwithstanding the absence of proof of any donative intent or delivery, possession, dominion, control, or acceptance.
§ 655.79(1),(2) (emphasis supplied); see also In re Estate of Combee, 601 So.2d 1165 (Fla. 1992) (evidence that decedent's will left her entire estate to petitioners did not overcome presumption that decedent intended the proceeds of her account to inure to other account holders upon her death); Davis v. Foulkrod, 642 So.2d 1129 (Fla. 4th DCA 1994) (error for the trial court to focus on decedent's donative intent), review denied, 652 So.2d 816 (Fla.1995).
Two of the accounts from which Dorothy removed funds after her mother's death were originally opened in the names of Isabelle and Dorothy and remained that way until Isabelle's death. Of the other accounts that were originally established jointly in the names of Isabelle, Dorothy and Edward, some of these accounts were closed prior to Isabelle's death; Edward appears not to have received the proceeds from these accounts. As to those accounts that Dorothy closed after Isabelle's death, Dorothy believed she was entitled to the funds by virtue of survivorship rights. Title for each of *61 those accounts was changed from Isabelle, Edward and Dorothy with rights of survivorship, to Isabelle in trust for various grandchildren, then to Isabelle and Dorothy, with rights of survivorship. Isabelle exercised control over these accounts and prior to her death could have closed all these accounts and removed all the funds. The facts presented to the lower court did not demonstrate that Edward overcame the presumption that Dorothy is entitled to all of the funds in the accounts held in the names of Isabelle and Dorothy.

DOROTHY'S BANK ACCOUNTS
We conclude that the trial court erred in awarding Edward one-half of the account balances in the accounts held jointly in the names of Dorothy and Edward, with rights of survivorship. According to section 655.78, the funds in a deposit account in the names of two or more persons may be paid to, or on the order of, either of such persons  unless otherwise expressly provided in a contract, agreement or signature card. However, the presumption that a gift was intended by the depositor of funds into a joint account applies only to the funds remaining at the depositor's death. See Katz v. Katz, 666 So.2d 1025, 1027 (Fla. 4th DCA), review denied, 675 So.2d 927 (Fla.1996).
In order to establish that a non-depositing party is entitled to funds held in a joint account, that party must show: (1) that the depositor/donor had a clear intention to transfer a present interest; (2) delivery by surrender of dominion and control to the donee; and (3) acceptance of the gift by the donee. See Reiner v. Reiner, 400 So.2d 1292 (Fla. 4th DCA 1981) (for there to be an inter vivos gift of funds in a joint account, "there must exist an intention that each party shall have a present equal right to withdraw the funds") (quoting Chase Fed. Sav. & Loan Ass'n v. Sullivan, 127 So.2d 112 (Fla.1960), superseded by statute on other grounds as stated in, Estate of Combee, 601 So.2d at 1165).
Although the accounts are held in the joint names of Dorothy and Edward, Dorothy testified that all the money deposited belonged to her, and that she never intended to gift Edward with any of the funds in the account. Dorothy further testified that all her social security payments and interest compounded in those accounts. Although all the signature cards but one have Edward's signature on them, Dorothy maintains that she placed Edward on the account only so that if she became ill he could take care of her, or receive the funds upon her death. Dorothy also testified that as a precautionary measure she has held all her investments jointly with a right of survivorship, first with her father, and then with her brother, so that if she was incapacitated the joint account holder could use her savings and investments to care for her.
At trial, Edward admitted that he never deposited funds into any of the accounts, made any withdrawals from the accounts, or otherwise exercised any control over them. His claim to the funds is based on the fact of his being a joint title holder, and the theory that the funds could have been the result of transfers from other accounts, upon which he was a named account holder. We conclude that Edward has not proved that Dorothy intended to pass a present interest in the accounts to Edward, and he is not entitled to the funds held in those joint accounts. Therefore, the trial court erred in awarding Edward one-half of those accounts.

THE STOCK
The requirements for inter vivos transfer of stock are intent, delivery and acceptance. See Sullivan v. American Tel. & Tel. Co., 230 So.2d 18 (Fla. 4th DCA 1969). However, registering stock in two names creates the rebuttable presumption that a gift was intended. See Mercurio v. Urban, 552 So.2d 236, 237 (Fla. 4th DCA 1989) (holding that appellee was entitled to a presumption of gift as a result of her name appearing on the subject stock certificate); Sullivan, 230 So.2d at 20 (registering stock in both names creates a presumption of gift, but presumption is not conclusive and may be rebutted); Freedman v. Freedman, 345 So.2d 834, 837 (Fla. 3d DCA 1977) (where father exercised dominion and control over the stock, made the investment decisions, and received all the dividends, father never relinquished dominion *62 or control over the stocks, and thus never made a valid inter vivos gift of them to his son).
Edward claims an entitlement to stock, held jointly with rights of survivorship, in his name and in Dorothy's name. Edward testified that he was entitled to one-half of those stocks because they could have been purchased by their father as a gift to both of them. Edward conceded that he did not purchase any of the stocks, or contribute any money toward their purchase. Edward never had possession of the stock certificates, never received, or made a claim for, any of the dividends from the stock, and did not know the value or identification of those stocks until the litigation before this court.
Dorothy maintains that the stocks were purchased completely with her funds, and that she originally placed her father's name on the certificates because he helped her handle her money and make investment decisions. She claims that after her father's death, she placed Edward's name on the stock certificates, not because she intended those stocks as a gift, but so that in case something happened to her, or she became incapacitated, Edward would have access to those assets to care for her.
Based on Dorothy's exclusive control over the stock, and Edward's lack of knowledge regarding the identity and amount of the stock, and the fact that he never received any dividends and never exercised any dominion and control over them, we conclude that Dorothy intended for Edward to receive an interest in the stock only upon her death, and did not intend an inter vivos transfer.
We affirm the trial court in all other respects. As to the award to Edward of one-half the proceeds from the sale of Bell South stock held jointly in the names of Isabelle, Dorothy and Edward, the record supports the conclusion that Edward was entitled to one-half the proceeds. As to the trial court's refusal to award Dorothy attorney's fees and costs incurred in defending Edward's civil theft claim, we conclude that the record supports the trial court's determination that Dorothy was not entitled to attorney's fees. Because Edward's name was forged on the Bell South stock sell order, even though it was not proven that Dorothy, rather than Isabelle forged the name, there was at least substantial factual support for Edward's claim of civil theft. See § 772.11; Skubal v. Cooley, 650 So.2d 169 (Fla. 4th DCA 1995).
However, we also affirm the trial court's refusal to award Edward attorney's fees on his civil theft claim. The trial court concluded, based on his observations of the testimony and demeanor of all the witnesses, that Edward was not entitled to attorney's fees and treble damages. Edward was unable to show that Dorothy had criminal intent, which would be necessary to support his civil theft claim. See Friedman v. Lauderdale Med. Equip. Serv. Inc., 591 So.2d 328 (Fla. 4th DCA 1992). Thus, because there is substantial evidence to support the trial court's decision, we affirm.
On cross-appeal, Edward claims the trial court erred in refusing to invalidate two quitclaim deeds transferring Isabelle's interest in two properties to Dorothy. Edward claims that these deeds were the product of undue influence. We disagree.
A deed may only be set aside on the grounds of undue influence if the party contesting the deed shows that the will of the grantor was overcome, depriving the grantor of free agency. See Pratt v. Carns, 80 Fla. 243, 85 So. 681 (1920). The law raises a presumption of undue influence if there was a confidential relationship between the grantor and beneficiary, and the beneficiary actively procured the instrument granting the gift. See Williamson v. Kirby, 379 So.2d 693, 695 (Fla. 2d DCA 1980) (citing In re Estate of Carpenter, 253 So.2d 697 (Fla.1971)). Once these factors are shown, the beneficiary has the burden of giving a reasonable explanation for the transfer. The beneficiary does not have to prove an absence of undue influence; instead, once he provides a reasonable explanation, the presumption of undue influence vanishes and the trial court must then determine if the plaintiff has established undue influence by the greater weight of the evidence. See Ballard *63 v. Ballard, 549 So.2d 1176 (Fla. 2d DCA 1989).
Uncontradicted testimony established that Dorothy was Isabelle's primary caretaker, that they lived in the same building, and that they enjoyed a close relationship, including sharing bank accounts and property. The record also reflects that Dorothy prepared the quit-claim deeds, and arranged for a notary to notarize the signatures. However, according to the notary and another witness, Dorothy's mother knew what she was doing when she signed the deeds, and expressed a desire to give Dorothy her property. The record also reveals that Edward had much less contact with his mother. He lived in New York and saw his mother approximately once a week during the three to four winter months he spent in Florida each year. Prior to Isabelle's execution of the quit-claim deeds, Edward left two messages on Dorothy's answering machine which his mother heard, and which caused her to worry that she might lose her home because of Edwards' actions concerning the property. Based on all the evidence contained in the record, we cannot conclude that the trial court erred in determining that the quit-claim deeds were not the product of Dorothy's undue influence.
Finally, Edward alleges error because the trial court refused to invalidate one of the deeds which was not properly notarized. However, pursuant to the plain language of section 689.01, a seal is not necessary to give validity to a deed otherwise properly executed in compliance with the statute. Because we find the deed was so executed, we affirm the trial court on this issue as well.
WARNER and FARMER, JJ., concur.