In re Freda Lois KELLMAN, Debtor.

**Gordon P. Jones, as Chapter 7 Trustee, Plaintiff,**

v.

**Allen I. Kellman, Defendant.**

Bankruptcy No. 98–08311–3F7.
Adversary No. 99–188.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Dec. 3, 1999.

Lance Paul Cohen, Jacksonville, FL, for Defendant.

Raymond R. Magley, Jacksonville, FL, for Plaintiff/Trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This proceeding is before the Court on a Complaint filed on June 22, 1999 by Gordon P. Jones, as Chapter 7 Trustee, ("Trustee") seeking to avoid a transfer of property pursuant to 11 U.S.C. § 548. (Doc. 1.) Allen I. Kellman ("Defendant") filed an answer on July 7, 1999 denying material allegations and asserting affirmative defenses. (Doc. 5.) The Court conducted a trial on October 6, 1999. At the conclusion of this trial, the Court asked both parties for submissions to support their positions. Upon the evidence presented and the argument of counsel, the Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

In 1983 Defendant married Freda Lois Kellman ("Debtor"), sole debtor in the underlying bankruptcy case, and the two have remained married since that date. Prior to their marriage, Defendant opened a share draft account with Jax Navy Federal Credit Union ("Jax Navy account") with approximately $20,000.00 that Defendant accumulated during his service with the United States Navy. Defendant also directed that his Navy retirement payments be directly deposited into his Jax Navy account.

After receiving an honorable discharge from the United States Navy, Defendant held various positions in civilian employment until his retirement in 1993. Defendant maintains a separate checking account at another financial institution where he deposited most of his earnings from civilian employment. Defendant pays for he and his wife's living expenses and bills with funds from his checking account. If the checking account does not contain sufficient funds to pay for living expenses, Defendant withdraws money from the Jax Navy account and makes a deposit into the checking account to cover those expenses.

During their marriage, Defendant has been the primary income producer while Debtor has primarily been a homemaker. Debtor earns some income through jobs such as cosmetic sales or babysitting, but does not work a regular job. Defendant pays all expenses including the rent, utilities, groceries and car insurance. Defendant and Debtor each drive separate cars, which are titled in Defendant's name and which Defendant paid for.

On May 29, 1991, Debtor and Defendant signed a Membership Application for the Jax Navy Federal Credit Union ("Jax Navy").[1] The application listed Defendant at the top front with Debtor listed toward the bottom. Both Defendant and Debtor signed the back of the application. Debtor circled the option of being a Joint Member, rather than a Joint Owner. A Joint Member is "[E]ntitled to full services of credit union including making deposits and withdrawals on your account. (Must be eligible for membership)." A Joint Owner is "[O]nly authorized to make deposits and withdrawals on your account. (Does not have to be eligible for membership)."

Defendant and Debtor testified that Debtor was added as a joint member so she could access Defendant's Jax Navy account if Defendant became disabled or was no longer able to take care of his personal affairs. Defendant also testified that Debtor was made a joint member so that the Jax Navy Account would pass to Debtor upon Defendant's death. Defendant and Debtor testified that they never intended that the Jax Navy account to be jointly owned by Debtor or that Debtor have an ownership interest in Defendant's Jax Navy account.

After joining, Debtor opened her own separate checking and savings account at Jax Navy. Debtor deposited her individual earnings into these accounts and paid her personal bills and expenses from her Jax Navy checking account. Debtor obtained a signature loan from Jax Navy and a Jax Navy credit card, both in her name. Debtor made payments on these obligations from her own funds and claims that her husband was not obligated on the Jax Navy signature loan or her Jax Navy credit card.

At some point around 1993, Defendant inherited approximately $80,000.00 from Dorothy C. Engelhardt, Defendant's great-aunt.[2] Defendant purchased certificates of deposit ("CDs") from Jax Navy with most of his inheritance and deposited the balance into his Jax Navy account. Defendant testified that the CDs have always been in his individual name.

On July 2, 1998, Debtor signed a "Consent and Release to Remove a Joint Owner from a Share Account" effectively remov-

---

**1.** Factual discrepancies exist as to the exact date Debtor joined Jax Navy. The membership application contains an illegible date that could be construed as August 18, 1970 or August 18, 1990. Defendant testified at his deposition that the date would have to be 1990. However, the evidence before the Court contains a photocopy of what presumably is the back of this application. This photocopy contains Debtor's signature, circled choice of Joint Member, and a date of May 29, 1991.

**2.** Factual discrepancies exist as to the exact amount of money Defendant inherited from Dorothy C. Engelhardt. While being deposed, Defendant testified that he received an inheritance of approximately $60,000 to $65,000 but at trial Defendant testified that the inheritance was $82,000.

ing herself from her husband's Jax Navy account and releasing "all right, title and interest in and to all and any funds now on deposit in the account." On July 3, 1998, Defendant signed another membership application with Jax Navy that made Debtor the beneficiary on the account. Defendant testified that he removed Debtor because he was concerned that if Debtor filed for bankruptcy protection, Jax Navy would close his account and that he always intended that Debtor would inherit funds in the account upon his death.

On October 2, 1998, having no joint debts with her husband, Debtor individually filed a voluntary petition for chapter 7 bankruptcy protection. Debtor listed assets of $435.00 and liabilities of $25,887.57, all unsecured. In her Schedule B—Personal Property, Debtor listed a joint checking account at Barnett Bank with a value of $50.00 and her individual accounts at Jax Navy worth $5.00. Debtor did not list an interest in her husband's Jax Navy account nor did she disclose any interest at the 341 meeting.[3] Trustee became suspicious upon noticing $3,776.00 of earned interest on Debtor and Defendant's 1997 joint tax return. Trustee sent Debtor's attorney a letter requesting copies of the bank statements for accounts and certificates of deposits which the debtor had an interest one year prior to the filing but

Debtor produced no documents in response.[4] Trustee then subpoenaed the documents from Jax Navy. Debtor did list unsecured debts to Jax Navy for $2,000.00 on a signature loan and $15,325.27 on a credit card. According to Debtor and Defendant's testimony, Defendant is not obligated on these debts.

Trustee contends that Defendant added his wife to the Jax Navy account because they had been married for seven years, she did all the household chores, and they decided that she should be a joint owner of the money in their primary account being used to pay their bills. Defendant contends that his wife never had an ownership interest in his Jax Navy account consisting primarily of his separate inheritance and Navy retirement payments.

## CONCLUSIONS OF LAW

The threshold issue is whether Debtor had such an ownership interest in her husband's Jax Navy account as to bring a portion of those funds into her bankruptcy estate. If Debtor had no interest then there could not be a transfer of property that Trustee could avoid under 11 U.S.C. § 548. However, if Debtor did have the interest Trustee claims she did, then clearly an avoidable "transfer" occurred. 11 U.S.C. § 101(54) (1999).

**3.** According to Defendant's submission, Defendant's account contained $3,331.56 in his primary savings account, $21,887.72 in CD # 53228, and $42,189.04 in CD # 63887 on the petition date.

**4.** On December 23, 1998 Trustee sent a letter to Lance Paul Cohen, Debtor and Defendant's attorney, requesting copies of bank statements for any and all accounts in which the debtor had an interest for the one year prior to filing (10/2/97 through 10/2/98) whether opened or closed and any and all documents regarding any and all certificates of deposits in which the debtor had an interest for the one year prior to filing (10/2/97 through 10/2/98), whether opened or closed. (Pl.Ex. 5.) This letter accompanied a Motion for Rule 2004 Examination of Defendant. The Court notes that it will not generally direct an entity to produce documents in conjunction with entering an order granting a Rule 2004 exami-

nation. Trustee claims that Debtor produced no CDs. Additionally, on or about February 2, 1999, Raymond R. Magley, Trustee's attorney, subpoenaed on Jax Navy requesting "[A]ll bank records relating to any bank accounts and/or certificates of deposit in which Freda Lois Kellman has an interest (including accounts and certificate of deposits she owns or jointly owned with her husband) between October 1, 1997 and the present ..." (Pl.Ex. 8.) Trustee represents that no CDs were produced.

In his Post–Trial Brief (Doc. 17) Trustee claims he subpoenaed Defendant commanding production of all documents received from Jax Navy that are in his possession. This subpoena was not admitted into evidence at trial. Trustee claims he did not receive any CDs and questions whether such CDs even exist.

When a debtor files a petition for bankruptcy protection, "all legal or equitable interests of the debtor in property as of the commencement of the case" become property of the estate. 11 U.S.C. § 541(a)(1) (1998). Deciding whether a debtor's interest constitutes "property of the estate" is a federal question. *Charles R. Hall Motors, Inc. v. Lewis (In re Lewis),* 137 F.3d 1280, 1283 (11th Cir.1998). However, "the nature and existence of the [debtor's] right to property is determined by looking at state law." *Southtrust Bank of Alabama v. Thomas (In re Thomas),* 883 F.2d 991, 995 (11th Cir.1989); *See Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979).

Trustee claims that Defendant gifted half of the Jax Navy account to Debtor. Additionally, Trustee cites *Archer v. Archer,* 712 So.2d 1198, 1199 (Fla. Dist.Ct.App.1998) for the proposition that when a joint account, originally established with non-marital property, is commingled with marital property so that the original non-marital property becomes non-traceable then the joint account is presumed to be marital property.[5] Trustee claims that post-marriage pension money and money from civilian employment deposited into the Jax Navy account was marital property, therefore marital and non-marital properties were commingled. *See* FLA. STAT. § 61.075 (1999) (applicable in proceedings for dissolution of marriage). However, this case is not a marital dissolution. Rather, this is a bankruptcy case seeking a threshold determination of whether Debtor held an interest in Defendant's Jax Navy account. Hypothetically, in a marital dissolution, Debtor may be entitled to funds in Defendant's account without ever having been listed on that account. The fact that an asset would be considered marital property for purposes of marital dissolution does not necessarily mean that such an asset becomes part of an individual spouse's bankruptcy estate.

The presumption that a depositor of funds into a joint account intends a gift applies only to funds remaining at the depositor's death. *Mulato v. Mulato,* 705 So.2d 57, 61 (Fla.Dist.Ct.App.1997), *review denied,* 717 So.2d 535 (Fla.1998) (citing *Katz v. Katz,* 666 So.2d 1025, 1027 (Fla. Dist.Ct.App.), *review denied,* 675 So.2d 927 (Fla.1996)). *See* FLA. STAT. § 655.79 (1999) (presumption that account held in two names vests in survivor upon death of other may be overcome by clear and convincing proof of contrary intent); *Hutchins v. Hutchins,* 113 So.2d 412 (Fla.Dist. Ct.App.1959) (evidence against joint ownership must be clear, positive, and unequivocal to overcome presumption); *Maryea v. Maryea,* 320 So.2d 882, 884 (Fla. Dist.Ct.App.1975) (insufficient evidence to overcome presumption of gift in interest in certificate of deposit jointly held); *See also In re Goldstein,* 135 B.R. 703 (Bankr. S.D.Fla.1992). "In order to establish that a non-depositing party is entitled to funds held in a joint account, that party must show: (1) that the depositor/donor had a clear intention to transfer a present interest; (2) delivery by surrender of dominion and control to the donee; and (3) acceptance of the gift by the donee." 705 So.2d at 61. In *Mulato* the court found that a sister did not intend to pass a present interest in funds placed in joint account with her brother when the account was opened. *Id.* The brother claimed that he was entitled to half of the funds based on the fact that he was listed as a joint titleholder. However, the brother admitted to never depositing funds, withdrawing funds, or exercising control over the funds. The court found that the brother was not entitled to a half interest in the joint account.

---

5. Once demonstrated that certain identifiable assets within a joint account are non-marital assets, and never became commingled or otherwise untraceable, the burden shifts to the party seeking to establish that a gift was made to prove such gift was actually made. *Archer,* 712 So.2d at 1200. Creation and maintenance of a joint tenancy in personal property is not enough to establish the presumption that a gift was intended. *Id.*

For a CD to be maintained as a "joint tenancy with rights of survivorship" not only must the signature card contain an agreement in clear and unambiguous language to that effect, but there must also be the absence of clear evidence to the contrary that at the time of execution of the account a different form of account was intended.

*In re Goldstein,* 135 B.R. at 705 citing *In re Nunley,* 19 B.R. 785, 787 (Bankr. E.D.Tenn.1982). In *Nunley,* a debtor and her son held a joint bank account with signature cards noting rights of survivorship. 19 B.R. at 787. Evidence presented showed that the debtor would only withdraw funds at the request of her son who was the intended true owner. *Id.* The Court found that the debtor did not have an ownership interest in the account and therefore the joint account was not property of the estate. *Id.*

■ While it is true that certain acts involved with joining parties to an account create a presumption of a gift, such a presumption may be overcome. The Court finds Defendant's testimony that he never intended to give Debtor an interest in the Jax Navy account to be credible and convincing, despite the fact that such testimony is self-serving. The evidence presented does not sufficiently counter Defendant's position that the account was his, that only he deposited and withdrew funds from the account, and that he only added Debtor for the purposes stated. Evidence in this case raises this Court's suspicions, especially the removal of Debtor from the account shortly before filing her petition. However, this married couple never pooled their financial resources. *See Walser v. Walser,* 473 So.2d 306, 308 (Fla.Dist.Ct. App.1985) (commingling inheritance of one spouse with joint funds in active joint accounts which both spouses used sufficient to overcome "no-gift" presumption). Rather, Defendant and Debtor maintained separate financial lives. While Debtor's name was on her husband's account, Debtor did not make deposits nor withdraw funds from his accounts. Debtor maintained her own separate accounts and a separate relationship with Jax Navy than that of Defendant.

### CONCLUSION

■ A deposit by one spouse into an account in the names of both spouses, standing alone, does not constitute a gift to the other spouse. The law requires a showing of donative intent coupled with delivery by surrender of dominion and control to the donee and acceptance of the gift by the donee. Defendant's testimony was clear that he never intended to give his wife a present interest in the funds at issue. Accordingly, the Court finds that Debtor did not have an ownership interest in her husband's Jax Navy account as to bring a portion of those funds into her bankruptcy estate. Therefore, there was not a transfer between Debtor and Defendant that may be avoided under 11 U.S.C. § 548.